The STATE of Ohio, Appellee,

v.

MUSHRUSH, Appellant.■

[Cite as *State v. Mushrush* (1999), 135 Ohio App.3d 99.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–980658.

Decided June 18, 1999.

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Paula E. Adams,* Assistant Prosecuting Attorney, for appellee.

*Hal R. Arenstein,* for appellant.

WINKLER, Judge.

On April 23, 1998, a talent show was held in the Oak Hills High School auditorium. Approximately four hundred people, including young children and senior citizens, were watching the talent show when the defendant, who was not a student at the school, pulled out a mace canister. The defendant set off the mace canister, releasing the chemical irritant into the air.

The growing cloud of chemical irritant caused panic throughout the auditorium. All four hundred attendees rushed to the exit doors, pushing their way outside. Two women, Anna Weber and Amanda Hartman, fell victim to the irritant. As her three children watched, Weber had a seizure and went into convulsions. Hartman, a sixteen-year-old, got the chemical irritant in her eyes and had great difficulty breathing.

As the defendant tried to flee, James Williamson, the school principal, approached and tried to detain the defendant. The defendant, in his attempt to escape, pushed Mr. Williamson, who reinjured one of his knees. The defendant then fled across the school grounds.

Several people saw the defendant attempting to flee and gave chase. Donald Weil, along with several others, tackled the defendant. The defendant bit Weil, leaving a noticeable bite mark on Weil's hand. The defendant was then handed over to the police and taken to the hospital.

While at the hospital, the defendant continued to act threateningly towards the hospital personnel. The defendant also spit in the face of the doctor trying to treat the cuts and bruises the defendant sustained while engaged in the scuffles with Williamson and Weil.

On April 29, 1998, the Hamilton County Grand Jury returned a five-count indictment against the defendant. The defendant was charged with three counts of inducing panic in violation of R.C. 2917.31(A)(3),[1] felonies of the fourth degree, one count of assault on James Williamson, a school administrator, while on school

---

1. The three inducing-panic charges were based upon committing the offense of assault on Anna Weber, Amanda Hartman, and Donald Weil.

premises, in violation of R.C. 2903.13(A), a felony of the fifth degree, and one count of felonious assault for knowingly causing serious physical harm to Anna Weber in violation of R.C. 2903.11(A)(1), a felony of the second degree.

On June 24, 1998, the defendant withdrew his plea of not guilty and entered a plea of guilty to the offenses charged in the indictment. At the plea hearing, the defendant was informed of his rights pursuant to Crim.R. 11. The trial judge specifically informed the defendant that the maximum penalty he faced was thirteen and a half years. After ensuring that the defendant fully understood his rights, the trial judge found the defendant guilty on all counts. The trial judge then continued the matter until July 13, 1998, to allow for a presentence investigation and victim-impact statement.

On July 13, 1998, the defendant was sentenced by the trial judge. He received a sentence of eight years on the felonious-assault conviction, one year on the assault conviction, and one and a half years on two inducing-panic convictions. The remaining inducing-panic count was merged with the felonious-assault conviction. The trial judge ordered that the two inducing-panic sentences be served concurrently, but they were otherwise made consecutive to the felonious-assault and assault sentences. Thus, the defendant received a total sentence of ten and a half years' incarceration, three years less than the maximum term he could have received.

The defendant filed motions for appellate bond, which were denied both in the trial court and by this court. Additionally, the defendant's postsentence motion to withdraw his guilty plea was denied after a full hearing on the matter.

In this appeal, which we have *sua sponte* removed from the accelerated calendar, the defendant raises three assignments of error. In the first assignment of error, the defendant claims that the trial judge erred in denying his postsentence motion to withdraw his guilty plea. In the defendant's second assignment of error, he claims that his appointed counsel was ineffective in failing to inform him of the trial judge's antipathy towards him prior to the entry of the guilty plea. Finally, the defendant, in his third assignment of error, claims that the sentences imposed upon him were excessive and failed to comply with the purposes and procedures of R.C. 2929.11 to 2929.14. We begin our review with the ineffective-assistance-of-counsel claim, upon which the defendant's motion to withdraw his guilty plea was based.

To prevail on a claim of ineffective assistance of counsel in this case, the defendant must demonstrate that counsel's performance was deficient and that, but for counsel's deficient performance, he would not have entered a guilty plea. *Hill v. Lockhart* (1985), 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203; *State v. Xie* (1992), 62 Ohio St.3d 521, 584 N.E.2d 715; see, also, *Strickland v. Washington*

(1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Campbell* (1994), 69 Ohio St.3d 38, 630 N.E.2d 339; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. The key to determining whether counsel was ineffective in this case is whether counsel provided incorrect advice to the defendant, which, in turn, induced the guilty plea entered by the defendant.

The transcripts of the plea hearing and the motion to withdraw the guilty plea reveal that the defendant was properly informed of the rights he was waiving by entering his plea. Additionally, the trial judge engaged in a direct dialogue with the defendant in order to ascertain whether the defendant knew the maximum and minimum penalties he was facing, and whether any promises had been made to the defendant regarding the sentence he might receive. The trial judge also ensured that the defendant understood the implications of the guilty plea and that the plea was being entered into voluntarily and intelligently. Thus, neither the plea hearing nor the hearing on the defendant's motion to withdraw his plea reveals either that counsel for the defendant conveyed incorrect information to the defendant or that the defendant received any promises for a lenient sentence in exchange for his plea.

In addition to the transcripts, the record contains an affidavit of the defendant's counsel. While the affidavit does state that counsel "never anticipated in his wildest imagination that his client would receive the maximum sentence," that alone is not enough to demonstrate that counsel's performance was deficient. A review of that affidavit, which was filed with the motion to withdraw the guilty plea, does not support the defendant's contention that counsel provided incorrect information to the defendant. On the contrary, the affidavit reveals that counsel determined that a guilty plea would be in the best interests of the defendant, that the defendant was in agreement with counsel's assessment and was fully aware of the maximum range of sentences, that counsel engaged in conversations with the trial judge wherein the judge did not allude to any specific sentence, and that the trial judge never gave any indication that the maximum sentence would be imposed.

The defendant would have this court believe that his case is analogous to this court's decision in *State v. Collins* (Feb. 13, 1998), Hamilton App. No. C–970138, unreported, 1998 WL 57791; however, this case is distinguishable. In *Collins,* this court reversed the sentence imposed upon a defendant because counsel incorrectly informed the defendant that his sentences were to run concurrently, when, in fact, the sentences were to run consecutively. In this case, counsel did not misinform the defendant of the possible sentences, nor did counsel's performance in the plea negotiations or at the plea hearing in any way induce the defendant to plead guilty to the offenses charged in the indictment. The defendant's claim that counsel should have informed him of the trial judge's

antipathy towards him is speculative at best. The trial judge did not convey any antipathy toward the defendant, nor did the judge express that feeling to counsel for the defendant.

Without a showing that counsel's performance was deficient, defendant's claim of ineffective assistance of counsel must fail. Therefore, we overrule the defendant's second assignment of error and turn now to the defendant's first assignment of error.

Postsentence motions to withdraw guilty pleas are not freely granted because that would allow defendants to withdraw their pleas when unfavorable sentences are received. *State v. Peterseim* (1980), 68 Ohio App.2d 211, 22 O.O.3d 341, 428 N.E.2d 863. In order for the defendant to prevail on a claim that the trial judge erred in denying his postsentence motion to withdraw his guilty plea, the defendant needs to demonstrate that his guilty plea must be withdrawn to correct a manifest injustice. Crim.R. 32.1; *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715, citing *State v. Smith* (1977), 49 Ohio St.2d 261, 3 O.O.3d 402, 361 N.E.2d 1324. We review the trial judge's denial of the defendant's motion under an abuse-of-discretion standard. *Id.* An abuse of discretion has been defined to mean that a trial court's attitude was unreasonable, arbitrary, or unconscionable. *Xie, supra,* citing *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144. Had defendant's counsel been ineffective in his representation of the defendant, we could hold that a manifest injustice had occurred; however, having addressed that issue in the defendant's second assignment of error and determined that the defendant's counsel was not ineffective, we review the record to determine if there is some other basis to allow the defendant to withdraw his plea based upon manifest injustice.

The trial judge complied strictly with Crim.R. 11 in this case, demonstrating that the defendant knowingly, voluntarily, and intelligently entered his guilty plea. The defendant points to no other basis for manifest injustice that would lead us to conclude that the trial judge abused his discretion in denying the defendant's motion to withdraw his plea. While the defendant may have been surprised by the severity of the punishment imposed, that alone is not enough to demonstrate a manifest injustice. Therefore, the defendant's first assignment of error is overruled, and we turn now to the defendant's third assignment of error.

The heart of the defendant's appeal comes in his third assignment of error, wherein the defendant challenges the sentences imposed upon him. The defendant claims that the trial judge erred when he (1) imposed the maximum sentence for each conviction, (2) found that the crimes were the worst forms of the charged offenses, and (3) imposed consecutive sentences. We disagree.

■ The felony sentencing scheme pursuant to R.C. 2929.11 to 2929.18 sets forth specific guidelines within which a trial court may exercise limited discretion. R.C. 2929.12(A); *State v. Maynard* (1999), 132 Ohio App.3d 820, 726 N.E.2d 574. R.C. 2929.11 through 2929.18 require trial courts to make specific findings when imposing a sentence. Those findings must be supported by clear and convincing evidence. R.C. 2953.08(G)(1). A trial court's failure to follow the guidelines and to make the required findings to support the imposition of a sentence is contrary to law. *Id.*; see *State v. Sheppard* (1997), 124 Ohio App.3d 66, 705 N.E.2d 411; see, also, *State v. Holsinger* (Nov. 20, 1998), Pike App. No. 97CA605, unreported, 1998 WL 820035; *State v. Napier* (Aug. 28, 1998), Hamilton App. No. C–970383, unreported, 1998 WL 542715; *State v. Stevens* (Sept. 21, 1998), Clinton App. No. CA98–01–001, unreported, 1998 WL 640889. If the imposition of the sentence is contrary to law or is not supported by the evidence, then this court may increase, reduce, or modify the sentence, or we may vacate and remand for resentencing. See R.C. 2953.08(G); *Sheppard, supra; State v. Johnson* (Oct. 23, 1998), Hamilton App. Nos. C–980013 and C–980014, unreported, 1998 WL 735409.

Regardless of the level of offense, the trial court must consider the factors set forth in R.C. 2929.12 regarding the seriousness of the offense and the likelihood of recidivism. R.C. 2929.12. We find support in the record for the determination that the defendant's conduct was more serious than conduct normally constituting the offense of inducing panic. Specifically, the trial judge found not only that the defendant caused a mass-panic situation, but also that he caused serious physical harm to Anna Weber as a result. While the dissent contends that Anna Weber did not suffer serious physical harm, the record is clear that she suffered choking and unconsciousness as a direct result of the defendant's actions. Being choked "to the point of unconsciousness constitutes serious physical harm as defined in R.C. 2901.01(E)(3), as it cause[s] [the victim] to be in a state of temporary, substantial incapacity." *State v. Czajka* (1995), 101 Ohio App.3d 564, 575, 656 N.E.2d 9, 15. The trial judge also noted the defendant's prior juvenile record and a demonstrated pattern of substance abuse.

■ For fourth- and fifth-degree felonies, the trial court must make one of the required findings under R.C. 2929.13(B)(1) before a prison term may be imposed. R.C. 2929.13(B)(2)(a). Here, the trial judge noted that the defendant caused physical harm, that a prison term was consistent with the purposes and principles of sentencing, and that the defendant was not amenable to community-control sanctions. We conclude that the record supports the trial judge's findings for the imposition of a prison term for the fourth- and fifth-degree felonies committed by the defendant in this case.

We turn our attention now to the imposition by the trial judge of the maximum term of imprisonment for each conviction. Although the trial court must continue

to determine how best to comply with the purposes of sentencing pursuant to R.C. 2929.11 and 2929.12, the trial court must also comply with the narrow guidelines for the imposition of maximum sentences pursuant to R.C. 2929.14(C). In order to impose the maximum term of incarceration, the trial court must find that the defendant falls into at least one of the following categories: (1) "committed the worst forms of the offense," (2) "pose[s] the greatest likelihood of committing future crimes," (3) is a major drug offender, or (4) is a repeat violent offender. R.C. 2929.14(C). Categories 3 and 4 do not apply to the defendant in this case. Thus, the trial judge must have found that at least one of the first two categories applied to the defendant.

We cannot disagree with the trial judge's finding that the defendant committed "the worst forms of the offense," thereby warranting the maximum term of imprisonment for each conviction, unless we conclude that the trial judge's finding was not supported by clear and convincing evidence. Because "the worst forms of the offense" is not defined in the Revised Code, and may appear to allow for the arbitrary and discriminatory exercise of judicial discretion, we have asked the parties to provide memoranda to the court on the issue of whether "the worst forms of the offense" is unconstitutionally void for vagueness. The parties and the court agree that the phrase "the worst forms of the offense" is not unconstitutionally void for vagueness.

A statute is "void for vagueness if it fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden, or if the statute encourages arbitrary and discriminatory enforcement." See *Kolender v. Lawson* (1983), 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903; *Papachristou v. City of Jacksonville* (1972), 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110; *Coates v. City of Cincinnati* (1971), 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214. "Vague sentencing provisions[,]" which are supposed to define potential penalties for certain proscribed conduct, "may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *United States v. Batchelder* (1979), 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755, 764. However, sentencing guidelines, in contrast to sentencing provisions, are not designed to inform the offender of the consequences of violating a criminal statute, but are intended to guide judges in imposing a sentence. See *United States v. Wivell* (C.A.8, 1990), 893 F.2d 156; *State v. Jacobson* (1998), 92 Wash.App. 958, 965 P.2d 1140. The guidelines merely limit the discretion of the sentencing judge. Every defendant is different and needs to be dealt with in a particular way. Taking away judicial discretion entirely turns judges into clerks. So long as the exercise of that discretion falls within the law,

this court should not reverse a sentence, even if the sentence appears, as in the words of the sentencing judge in this case, "Draconian" and "harsh."

Furthermore, we note that there is no constitutional requirement, except in capital cases, for clearly defined guidelines. See *Lockett v. Ohio* (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973. In fact, the Sixth Circuit Court of Appeals has held that sentencing guidelines are not subject to a vagueness attack. See *United States v. Salas* (C.A.6, 1994), 16 F.3d 1223; *United States v. Smith* (C.A.6, 1996), 73 F.3d 1414. Thus, the sentencing guideline requiring that the trial judge find that the defendant committed "the worst forms of the offense" prior to imposing a maximum sentence is not unconstitutionally void for vagueness, even if the guideline may otherwise be considered ambiguous or amorphous. See *Wivell, supra.* The General Assembly must have intended the phrase "worst forms of the offense" to include many conceivable forms, because the plural "forms" contemplates "not just a single form of any offense that is the worst, but that more than one situation may be one of the worst forms of the offense." *State v. Patterson* (Sept. 21, 1998), Washington App. No. 97CA28, unreported, 1998 WL 720733; see, also, *State v. Dunwoody* (Aug. 5, 1998), Meigs App. No. 97CA11, unreported, 1998 WL 513606.

In order for the trial court to determine "the worst forms of the offense," and for this court to review such a finding, we must look to the sentencing guidelines as a whole. Of some assistance in our review of the trial judge's determination that the defendant in this case committed "the worst forms of the offense" is the statement set forth in R.C. 2929.12(A) that "a court that imposes a sentence under this chapter upon an offender for a felony *has discretion* to determine the most effective way to comply with the purposes and principles of sentencing * * *." (Emphasis added.) Further review of R.C. 2929.12 reveals that the factors set forth in R.C. 2929.12(B) and (C) guide the trial court in determining the seriousness of the offense, and must be considered in determining "the worst forms of the offense." See *Dunwoody, supra.* It is, therefore, left to the discretion of the trial court to determine what factors, in addition to those set forth in R.C. 2929.12(B) and (C), give rise to "the worst forms of the offense." Our only duty in reviewing the trial court's findings is to determine whether the record clearly and convincingly supports those findings; our duty is not to substitute our judgment for the discretion exercised by the trial court.

As we have discussed previously, upon review of the guidelines in R.C. 2929.12(B) and (C), it is clear that the defendant in this case caused serious physical harm to Anna Weber when she was rendered unconscious as a result of the defendant's actions. The defendant should have been aware that his use of a chemical irritant such as mace—a weapon—could have resulted in the deaths of

those who fell victim to his attack. This was not a case where the defendant pulled a fire alarm or yelled "fire!" in a crowded auditorium. The defendant should have appreciated the potential for serious harm prior to using the can of mace on unsuspecting victims.

■ At the sentencing hearing, the trial judge reviewed the seriousness of the offenses as a whole, rather than each offense individually. We hold that where, as here, the separate offenses were part of a single course of conduct, a trial court may review the separate offenses collectively when determining whether the offender committed "the worst forms of the offense." The trial judge stated that "the defendant has committed the worst form of this offense." In making that finding, the trial judge found that the mass exodus from the auditorium was "an extreme form of inducing panic," that "people could have been trampled or suffocated as a result of this [offense]," that people "could have been crushed," and that one of the victims had a seizure, went into convulsions, and "could have choked to death." The trial judge went on to say:

"To do anything else [except impose the maximum sentence] in this case would demean the seriousness of this offense and wouldn't adequately protect the public. Any other—there's no way I can give him the minimum term, and he's not amenable to community control. Prison clearly is consistent with all the sentencing purposes in the statute, and this case really is one that cries out for the maximum sentence. Considering everything that's happened in our schools, with the violence that's been in our schools lately, this case really, really, demands the maximum term."

Although the findings made by the trial judge indicate what may have happened as a result of the defendant's actions, had there been victims who were actually trampled, suffocated, choked, or crushed to death, the defendant would be facing much more serious charges than simply assault, felonious assault, and inducing panic. In our view, the evidence clearly and convincingly supports the trial judge's findings that the defendant committed the worst forms of assault, felonious assault, and inducing panic. Therefore, we have no legal basis to increase, reduce, modify, or vacate the imposition of the maximum sentence.

■ In addition to finding that the defendant committed "the worst forms of the offense," the trial judge could have found that the defendant posed the greatest likelihood of committing future crimes, which also would have allowed for the imposition of the maximum sentence. R.C. 2929.14(C)(2). In addition to using discretion in determining what factors give rise to the greatest likelihood of committing future crimes, a trial court must also be guided by the recidivism factors set forth in R.C. 2929.12(D) and (E). See *Dunwoody, supra.* In this case, the trial judge found that the defendant had been previously adjudicated a

delinquent and the defendant was not rehabilitated to a satisfactory degree, as evidenced by the fact that the defendant had committed numerous drug offenses, a theft offense, and a carrying-a-concealed-weapon offense. The trial judge also found that the defendant had a demonstrated pattern of drug and alcohol abuse that contributed to the offenses for which he was being sentenced. The trial judge did not make any findings that the defendant was not likely to commit future crimes. While the trial judge did not expressly state that the defendant posed the greatest likelihood of committing future crimes, the judge certainly could have done so in this case.

We conclude that finding that the defendant had committed "the worst forms of the offense" was clearly and convincingly supported by the record, and that the maximum term of imprisonment for each level of offense was properly imposed.

■■■ We must now determine whether the imposition of consecutive sentences for assault, felonious assault, and inducing panic was contrary to law. In order to impose consecutive sentences, the trial court "must find that consecutive sentences are *necessary to protect the public or to punish the defendant.* A court must also find that consecutive sentences are *not disproportionate to the seriousness of the defendant's conduct and the danger the defendant poses to the public.* Finally, the court must find that the defendant was under some form of court control when he committed the offenses, that the *physical harm he caused was so great or unusual that a single term would not satisfy the seriousness factor, or that his criminal history indicates a need to protect the public."* (Emphasis added.) *State v. Johnson* (Oct. 23, 1998), Hamilton App. Nos. C–980013 and C–980014, unreported, 1998 WL 735409.

In this case, the trial judge determined that the nature and circumstances surrounding the defendant's conduct created "harm in this case [that] was great and unusual," that "people could have been crushed," and that the defendant's juvenile record indicated a criminal history such that incarceration was necessary to protect the public. Furthermore, the trial judge found that the defendant's conduct was very serious and that "prison clearly is consistent with all the sentencing purposes in the statute." The trial judge also pointed out that the purpose of the sentence in this case was to deter the defendant and others from committing violence in our schools, which was a proper purpose for imposing a sentence of this type upon the defendant. R.C. 2929.11(A). Such findings sufficiently embodied a determination that the imposition of consecutive sentences was not disproportionate to the seriousness of the defendant's conduct and the danger such conduct posed to the public. Based upon the record, we conclude that the trial judge made the required findings for the imposition of consecutive sentences, and that the record clearly and convincingly supports those findings.

Our review of the sentences imposed upon the defendant reveals that the trial judge properly complied with the statutory requirements of R.C. 2929.11 to 2929.18 and made findings clearly and convincingly supported by the record. Therefore, we overrule the defendant's third assignment of error and affirm the trial court's judgment.

*Judgment affirmed.*

DOAN, P.J., concurs in judgment only.

PAINTER, J., dissents.

PAINTER, J., dissenting.

My mistake. I thought we lived *east* of the Pecos.

Because the decision today (1) abandons our legal responsibility to review sentences, (2) misinterprets the law, and (3) allows a shocking travesty of justice, I must dissent. I also note that, because Judge Doan concurs in "judgment only," the lead opinion has no precedential value.

Just about a month after his eighteenth birthday, Christopher Mushrush took a handfull of pills and flipped out. He somehow ended up at Oak Hills High School, spraying pepper spray (described by the prosecutor as a "chemical irritant") around the auditorium, where about four hundred people were attending a talent performance. The room was evacuated, and two people, including Anna Weber, passed out from the spray. Paramedics treated both at the scene. Perhaps worse, Mushrush visited personal violence on a person who tried to apprehend him (by biting him). The school principal, James Williamson, attempted to grab Mushrush, and as Mushrush pulled away, Williamson fell and reinjured one of his knees. Other citizens apprehended Mushrush and held him for the police. Mushrush woke up in jail, beaten, and with no memory of the incident.

Much more serious consequences could have ensued. Fortunately, they did not. No victims were hospitalized. To Mushrush in his drug-addled state, this may have seemed a prank. But the seriousness of his conduct needed to be impressed upon him. Though he could have received probation subject to drug treatment, such a sentence would perhaps not have received his full attention. Sometimes the "2 × 4" approach is called for. And because he did cause injury, the jail door needed to hit his backside.

### The Sentence

Mushrush pleaded guilty to all charges, throwing himself upon the "mercy" of the court as to the sentence. There were a number of charges, but he was sentenced on three major ones—inducing panic, assault, and felonious assault.

The most proper sentence would have been for inducing panic.[2] Because Mushrush ruined the evening of four hundred people who were, in the words of the prosecutor, "caused great inconvenience and alarm," because the biting incident was indicted as part of this charge, and because his actions could have caused a panic, his sentence on the charge of inducing panic could have been four hundred days, or perhaps a year and a half, five hundred forty days, the maximum sentence. Apart from the statutory factors and considerations, this would have been a harsh, but reasonable sentence. Coming out of prison at age twenty, having drug treatment while inside, and having a long time to think about where his life was heading, maybe he could become a productive citizen. The trial court's finding that this was one of the "worst forms" of inducing panic is supported by the record.

### "Hard on Crime"—Or Hard on the Taxpayers?

But Mushrush did not get one and a half years. He got *ten* and a half years. Because he received the maximum sentence for inducing panic, we have to look elsewhere for the genesis of this sentence.

Mushrush received one additional year for the assault against Williamson, the principal.[3] The normal penalty for assault is up to six months, but because Williamson is a school administrator, the law makes this assault a felony.[4] Mushrush cannot complain that the event aggravated a previous injury—it was his conduct that occasioned the problem. We all have to be responsible for the *actual* harm caused by our conduct—it is no answer to say that the fall might not have caused the same injury to someone else. While adding a full year to the sentence for this result borders upon excessive, I would not set it aside in this case.

The next eight years were imposed for the crime against Anna Weber.[5] According to the presentence report, Weber passed out after leaving the building, she believed, from the effects of the spray. It is unclear how long she was out, but she was examined by paramedics at the scene, and they did not take her to the hospital. She reported to the probation department that she has had no further difficulties since the night of the incident. Perhaps the worst part of the incident regarding Weber is that her three children were also present and were

---

2. Counts four and five of the indictment.

3. Count two of the indictment.

4. R.C. 2903.13(A).

5. Count three of the indictment. The biting and the other instance of causing unconsciousness were indicted as separate counts of inducing panic, and were thus addressed in the sentences imposed for counts four and five of the indictment.

understandably frightened at seeing their mother passed out. An eight-year sentence for this event is contrary to law, and to common sense.

The sentence is out of proportion with the incident and with other crimes. No weapon was involved. No blood flowed. No one went to the hospital. Many people who cause a death get less.[6] Long after this incident is forgotten, Mushrush will be in prison. Mushrush will, as a result of this sentence, rot in prison for three presidential elections, and, rather than having some hope of redemption, will come out a hardened criminal. Has the justice system in Ohio abandoned hope of rehabilitation even for an eighteen-year-old? No matter how long the sentence, absent the death penalty, people return to society. This sentence is not "hard on crime"—it is hard on the taxpayers, who will spend hundreds of thousands of dollars to warehouse a mace-spraying eighteen-year-old kid for more than a decade.

The Crime Doesn't Fit the Punishment—It Doesn't Even Fit the Crime.

The sentence is contrary to law for two reasons. First, the crime Mushrush actually committed was not even felonious assault, although he pleaded guilty to that offense. Felonious assault requires that the offender cause "serious physical harm" to the victim.[7] Felonious assault is thus contrasted with assault, which prohibits mayhem of a lesser nature. While the discomfort to Weber was certainly physical harm, it does not fall into any of the definitional categories for "serious physical harm," which are:

"(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

"(b) Any physical harm that carries a substantial risk of death;

---

6. For sentences of persons guilty of homicide who received less than Mushrush, see, e.g., *State v. Parker* (Jan. 19, 1999), Warren App. No. CA98–04–025, unreported, 1999 WL 17732 (seven years' incarceration); *State v. Waire* (Jan. 15, 1999), Hamilton App. No. C–980005, unreported, 1999 WL 12734 (ten years); *State v. Rogers* (Jan. 8, 1999), Hamilton App. No. C–970855, unreported, 1999 WL 6340 (nine years); *State v. Rodgers* (Jan. 7, 1999), Columbiana App. No. 98–CO–25, unreported, 1999 WL 35298 (indefinite term of two to ten years); *State v. McDaniel* (Nov. 30, 1998), Delaware App. No. 98CA–A–07–035, unreported, 1999 WL 3907 (four years); *State v. Webb* (Nov. 19, 1998), Cuyahoga App. No. 73974, unreported, 1998 WL 811326(five years' community control, plus two consecutive six-month jail sentences, but case remanded for resentencing); *State v. Karnes* (Nov. 13, 1998), Montgomery App. No. CA 17082, unreported, 1998 WL 785357 (ten years); *State v. Carter* (Nov. 12, 1998), Cuyahoga App. No. 73728, unreported, 1998 WL 787404 (indefinite term of three to ten years); *State v. Piergiovanni* (Oct. 20, 1998), Mahoning App. No. 97 C.A. 14, unreported, 1998 WL 775010 (indefinite term of five to ten years); *State v. Hamm* (Mar. 17, 1998), Richland App. No. 97 CA 20, unreported (eight years).

7. R.C. 2903.11.

"(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

"(d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement;

"(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain."[8]

No argument can be seriously advanced that the harm to Weber, unfortunate though it was, fits any of the above categories. The case cited by the lead opinion[9] concerned a physical choking, and is, in any event, wrongly decided. We should not follow that court into error. Greater degrees of crime are there for a reason. When we elevate lesser crimes to greater crimes by judicial fiat, we frustrate the intent of the law.

As a matter of law, then, Mushrush was not guilty of the offense of felonious assault, but guilty of assault, and could have received only six months' incarceration, not eight years. We can not reverse his conviction for the greater offense, though, because he pleaded guilty. But we can examine this issue in considering his first assignment of error—the involuntariness of his plea.[10] In *State v. Fish*, we held that one consideration in a motion to set aside a plea is "whether the accused was perhaps not guilty or had a complete defense to the charge or charges."[11] And we could reverse the denial of Mushrush's motion to withdraw his plea. Or we could consider the issue with regard to the sentencing. I would do the latter, as set out below.

### Bad, But Not the Worst

The sentence is facially contrary to law because it is the maximum sentence for felonious assault. Even were the crime to be shoehorned into a definition it does not fit, Mushrush is only eligible for the maximum sentence if he committed the "worst form" of the offense.[12]

---

8. R.C. 2901.01(A)(5).

9. *State v. Czajka* (1995), 101 Ohio App.3d 564, 656 N.E.2d 9.

10. *State v. Fish* (1995), 104 Ohio App.3d 236, 661 N.E.2d 788.

11. *Id.* at 240, 661 N.E.2d at 790.

12. R.C. 2929.14(C).

Apart from the problem of how one can commit the worst form of the offense when one did not even commit the offense itself, the offense here is clearly not the "worst form" of felonious assault. As can be seen from the above definitions, the worst form would entail very serious harm indeed. Beating someone with a baseball bat resulting in lengthy hospitalization and permanent brain damage would surely be worse. A stabbing with permanent scars or a shooting that almost results in death would qualify as felonious assault. The list could go on and on, but does not include the assault on Weber. The lead opinion's muddled attempt at justification—it says that the court can consider the offense that is the worst form of itself to make *another* offense the worst form of *itself*—that the court may not just add, but *multiply* sentences—is a shocking insult to the sentencing guidelines, not to mention logic or common sense. The finding of "worst form" is so clearly not supported by the record that the error is beyond cavil.

## A Retreat from Duty

This court has an affirmative duty to review sentences, to determine, in this case, whether the record supports the trial court's characterization of the "worst form" of the offense.[13] Our standard of review is whether the sentence is contrary to law, and whether it is supported by the record.[14] "Since the enactment of Senate Bill 2, an appellate court no longer reviews sentences under an abuse-of-discretion standard."[15] Under present law, this court has a duty to review sentences. The legislature has devised a procedure, difficult though it may be in application, that we must follow. We must scrutinize every appealed sentence for compliance with the admittedly difficult legal standards mandated by the legislature. We may not relish our duty, but we must not shirk it. The job of this court is to review sentences for compliance with the guidelines. And we have done so in other cases. For example, in *State v. Sheppard*,[16] an excellent opinion by Judge Sundermann of this court, we reduced a sentence because it was not justified by the record. It may not be possible, or desirable, to proportionalize sentences exactly—we must leave that to the sound decisions of

---

**13.** R.C. 2953.08(G)(1)(a); *State v. Hart* (Nov. 5, 1998), Cuyahoga App. No. 74589, unreported, 1998 WL 775022.

**14.** R.C. 2953.08(G)(1)(a).

**15.** *State v. Napier* (Aug. 28, 1998), Hamilton App. No. C–970383, unreported, 1998 WL 542715; see, also, *State v. Sheppard* (1997), 124 Ohio App.3d 66, 67–68, 705 N.E.2d 411, 412 ("[w]e first note that we no longer review sentencing under an abuse-of-discretion standard").

**16.** See, generally, *Sheppard, supra.*

the trial judges. As long as they are sound. A broad range of cases may constitute the "worst form." But this court should know an aberration when we see it. If the sentence in this case is not an aberration, then S.B. No. 2 is meaningless, and our sentence review is a sham.

If we compare other felonious-assault cases decided after the change in the sentencing law, myriad cases could be found in which a defendant charged with felonious assault caused much more harm and received a lesser sentence—just a few are set out below.[17] But a comparison should not be necessary to demonstrate that this sentence is contrary to law. We may not be able to define what is *not* the "worst form" of an offense, but we must know it when we see it. What we may not do is pretend to be blind.

---

**17.** For cases of felonious assault where the sentence was shorter than Mushrush's sentence, see, *e.g.*, *State v. Palmer* (Apr. 23, 1999), Hamilton App. No. C–980437, unreported, 1999 WL 235618 (repeatedly stabbing with a butcher knife: four years' incarceration); *State v. Day* (Oct. 23, 1998), Hamilton App. No. C–971079, unreported, 1998 WL 735375 (concurrent sentences of two years' incarceration for two counts of felonious assault, but case remanded for resentencing); *State v. Campbell* (Dec. 19, 1997), Hamilton App. No. C–970125, unreported, 1997 WL 778994 (assault in connection with a burglary: three years' incarceration on a felonious-assault count); *State v. Gales* (1999), 131 Ohio App.3d 56, 721 N.E.2d 497 (shooting victim in head: concurrent sentences of four years' incarceration for two counts of felonious assault); *Appellee v. Appellant* [*sic*] (Apr. 14, 1999), Medina App. No. 2831–M, unreported (beating victim by slamming head into car: one year incarceration); *State v. Bair* (Apr. 8, 1999), Cuyahoga App. No. 72281, unreported, 1999 WL 195659 (repeatedly striking victim in back of head: seven years' incarceration); *State v. Mullins* (Dec. 31, 1998), Lucas App. No. L–98–1059, unreported, 1998 WL 904926 (striking victim's face and body to facilitate a robbery: seven years' incarceration); *State v. Wagle* (Dec. 31, 1998), Lucas App. No. L–98–1127, unreported, 1998 WL 904952 (repeatedly hitting victim with baseball bat and kicking her before kidnapping her: five years' incarceration on a felonious-assault count); *State v. Drake* (Dec. 17, 1998), Franklin App. No. 98AP–448, unreported, 1998 WL 890169 (placing gun to victim's head and knocking her down: three years' incarceration on a felonious-assault count, but case remanded for resentencing); *State v. Keeton* (Dec. 11, 1998), Clark App. No. 98 CA 13, unreported, 1998 WL 852943 (striking victim three times with a support stand for a bumper jack: five years' incarceration); *State v. Brooks* (Aug. 18, 1998), Franklin App. No. 97APA11–1543, unreported, 1998 WL 514111 (beating victim with a car door: five years' incarceration, but case remanded for resentencing); *State v. Lytle* (July 31, 1998), Montgomery App. No. 97 CA 100, unreported, 1998 WL 429845 (striking victim, causing a fracture of the left cheek, tripod bone, and orbital floor: three years' incarceration); *State v. Jaap* (June 24, 1998), Summit App. No. 18711, unreported, 1998 WL 332948 (attacking victim with a shovel during a "road rage" incident, causing a broken shoulder and severe lacerations to victim's head: three years' incarceration); *State v. Davis* (June 18, 1998), Cuyahoga App. No. 72820, unreported, 1998 WL 323611 (assault with a golf club, causing "multiple contusion status post assault": two years' incarceration, but case remanded for resentencing); *State v. Blondheim* (May 27, 1998), Summit App. No. 18594, unreported, 1998 WL 281917 (shaking baby, causing "retinal hemorrhages" and brain swelling: five years' incarceration on a felonious-assault count); *State v. Wilson* (Apr. 17, 1998), Lucas App. No. L–97–1197, unreported, 1998 WL 196283 (beating wife, causing a broken nose and contusions to her head, face, extremities, and left shoulder: five years' incarceration); *State v. Longmire* (Mar. 27, 1998),

### Error Consecutive to Error

After sentencing Mushrush to maximum time on the felonious-assault count, the court further punished him by sentencing him to serve his felonious-assault and assault sentences consecutively to his inducing-panic sentences. By doing so, the court only compounded its errors.

To impose consecutive sentences, a court needs to find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." [18] In attempting to satisfy this requirement, the court strained to make findings to justify its conclusion. It determined that the "harm in this case was great and unusual" and that "people could have been crushed." But we must take the legislature's words at their meaning—the law does not say "almost caused" or "might have caused." The reality was that no victims were hospitalized, and nobody was crushed. And just as Mushrush cannot complain about the harm he actually caused to Williamson, he should not have to answer for harm he "might have," but did not, cause. In view of the maximum time given for felonious assault (already a disproportionate sentence), consecutive sentences *were* disproportionate to the seriousness of Mushrush's conduct and to the danger that he posed to the public.

Certainly, Mushrush deserves to be severely punished for the harm that he caused. But certainly the legislature did not intend for Mushrush to be punished as he was punished here. The trial court's decision to impose consecutive sentences was contrary to law and not supported by the record.

### What Justice Requires

The legislature has entrusted the appellate courts of this state with the duty to review aberrant sentences. This case is a prime example of the necessity for that review. The sentence is contrary to law for so many reasons as to defy further elaboration.

Therefore, to conform the sentence to the law, I would (1) affirm the sentence on counts two, four and five of the indictment, and (2) reduce the sentence on count three to two years, to be served concurrently with counts two and four. Mushrush would serve two and one half years in prison—a harsh but not unconscionable sentence.

---

Portage App. No. 97–P–0032, unreported, 1998 WL 156895 (striking victim with wine bottle, causing serious damage to victim's jaw: five years' incarceration).

18. R.C. 2929.14(E)(4).