DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Wood County Court of Common Pleas. Appellant, Tabitha Ulsh, pleaded guilty to: (1) one count of aggravated murder, a violation of R.C.2903.01(B), a special felony; (2) one count of felonious assault, a violation of R.C. 2903.11(A), a felony of the second degree; (3) one count of aggravated robbery, a violation of R.C. 2911.01(A), a felony of the first degree; (4) kidnapping, a violation of R.C. 2905.01(B), a felony of the first degree; and (5) tampering with evidence a violation of R.C. 2921.12(A), a felony of the third degree.
 {¶ 2} The trial judge sentenced appellant to a mandatory life sentence with eligibility for parole in 20 years, see R.C. 2929.03(A)(1) and 2929.13(F), for the offense of aggravated murder. Appellant received the following maximum sentences on the remaining offenses: (1) eight years for the offense of felonious assault; (2) ten years for the offense of aggravated robbery; (3) ten years for the offense of kidnapping; and (4) five years for the offense of tampering with evidence. The court further ordered these sentences to be served consecutively.
 {¶ 3} Appellant appeals her sentences and sets forth the following assignment of error:
 {¶ 4} "The trial court erred in sentencing appellant to maximum consecutive sentences and the sentences are contrary to law."
 {¶ 5} Appellant also indicates in her brief that the trial court erred in imposing prison terms greater than the shortest term authorized for the offense. The facts material to the disposition of appellant's contentions are revealed in the hearing on appellant's guilty plea and her sentencing. As recited by the prosecutor and affirmed by appellant, they are as follows.
 {¶ 6} On July 16, 2001, appellant and her boyfriend, Jimmie Gene Woodland, read an article in the newspaper concerning missing adults. The article stated that, unlike incidents where children are reported missing, the authorities might wait several days before investigating the disappearance of an adult. Based on this article, appellant and Woodland developed a plan to "seek out an adult victim, drug him, murder him, and have access to his valuables and have several days lead time in which to escape."
 {¶ 7} Appellant and Woodland placed a drug, described as a "sleeping potion," in a small vial that appellant could hide in her purse. On July 20, 2001, they went to a Wal-Mart Department Store and purchased two shovels that were to be used to bury their victim after the murder. Later that evening, Woodland dropped appellant off at a bar in Findlay, Ohio for the purpose of finding a victim.
 {¶ 8} Appellant went into the bar where she met Fred Smith, who was in Findlay with two of his friends for a trapshoot. Without Smith's knowledge, appellant put the contents of the vial into his drink. While under the influence of the drug, the victim left the bar with appellant. He was taken to the Woodland home in Fostoria, Ohio, where he was assaulted by Jamie Woodland. Smith managed to escape and ran down the street. However, he was caught by Jamie Woodland and his half-brother, Joe Alexander. Both men assaulted Smith and then "loaded" him into his own vehicle, a Blazer. While transporting the victim to Cygnet, Ohio, the place chosen by appellant and Woodland for the murder and burial, Smith regained consciousness on two separate occasions. He was again assaulted by Woodland on each of those occasions.
 {¶ 9} When they reached the burial site, Woodland beat Fred Smith to death with a shovel. The assault was so brutal that the shovel handle broke off during the process. After burying the victim, appellant and Woodland took Smith's credit cards, his shotgun, and his Blazer and went to Mexico. However, Fred Smith's family reported that he was missing, the police conducted an immediate investigation, and appellant and Woodland were apprehended.
 {¶ 10} We shall first address the question of whether the trial court erred in imposing nonminimum sentences for each of appellant's convictions.
 {¶ 11} R.C. 2929.14(A)(1) through R.C. 2929.14(A)(3) provide a range of sentences for felonies of either the first, second, or third degree. For example, the definite prison terms listed for aggravated robbery are three, four, five, six, seven, eight, nine, or ten years. In most instances, a trial court must impose the shortest prison term listed for offenders who have not served a prison term. R.C. 2929.14(B). It is undisputed that appellant never served a prison term.
 {¶ 12} Nonetheless, a nonminimum sentence may be imposed in those cases where "the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime." R.C. 2929.14(B)(2). The Ohio Supreme Court interprets R.C. 2929.14(B) as requiring the trial court to make either or both findings on the record at the sentencing hearing. State v. Edmonson (1999), 86 Ohio St.3d 324, 326. See, also,State v. Comer, 99 Ohio St.3d, 2003-Ohio-4165 at ¶ 26. The court is not obliged to state the reasons for its finding(s). State v. Edmonson at the syllabus.
 {¶ 13} In the case under consideration, the minimum sentence for the two first degree felonies, aggravated robbery and kidnapping, is three years. For the second degree felony, felonious assault, the minimum sentence is two years, and for the third degree felony, tampering with evidence, it is one year. Clearly, the common pleas court did not impose the minimum sentence for any of these offenses. Nonetheless, at the sentencing hearing the court made the following finding:
 {¶ 14} "The Court finds for the Record that the shortest prison term will demean the seriousness of the offender's conduct and will not protect the public from future crime by the offender and others."
 {¶ 15} Accordingly, and upon a thorough review of the record of this case, we conclude that the trial court complied with the statutory requisites in imposing terms of imprisonment longer than the shortest terms listed in R.C. 2929.14(A) for felonies of the first, second, and third degree.
 {¶ 16} Second, appellant contends that the trial judge erred in imposing the maximum sentences for the offenses of aggravated robbery, felonious assault, and tampering with evidence. Specifically, appellant maintains that the trial court failed to make the required findings set forth in R.C. 2929.14(C), and the reasons for these findings as required by R.C. 2929.19(E), on the record.
 {¶ 17} A court may impose maximum prison terms upon offenders who (1) commit the worst forms of the offense; (2) pose the greatest likelihood of committing future crimes; (3) are certain major drug offenders under 2929.14(D)(3); or are certain repeat violent offenders in accordance with R.C. 2929.14(D)(2). R.C. 2929.14(C). The pertinent finding and the reasons for that finding must be made on the record at the sentencing hearing. See State v. Newman, 100 Ohio St.3d 24,2003-Ohio-4754 (reversing, without opinion and on the basis of Comer, a case in which the Ninth District Court of Appeals found that the court's findings and reasons for imposing a maximum sentence could be stated at either the sentencing hearing or in its judgment entry).
 {¶ 18} In imposing maximum prison sentences, the trial court found that appellant "committed some of the very worst forms" of the offenses and further held that she posed a great likelihood of committing future crime. The court then referred to its earlier recitation of the facts as its reasons for these findings, as well as the facts of the case as recited by the prosecuting attorney and attested to by appellant. The relevant portion of the court's reasons for its findings reads:
 {¶ 19} "It was a very long and brutal evening. * * * [T]here were up to five separate assaults during the course of many, many hours that evening. The evidence of premeditation is substantial — a thought-out plan, a plan that was prepared for long in advance; and then a plan that was implemented going to the bar with the drugs and acquisition of the shovels, the planned disposition of evidence following the offenses, the ultimate fulfillment of the plan by taking the Blazer and going on the trip to Mexico. These are the factors I find very persuasive in this case.
 {¶ 20} "The victim in this offense suffered incredible physical harm as a result of these offenses; * * *."
 {¶ 21} Based on the foregoing, we hold that the trial court set forth the mandatory findings and sufficient reasons for those findings on the record at the sentencing hearing.
 {¶ 22} Therefore, the court below did not err in imposing the maximum sentences for the offenses of aggravated robbery, felonious assault, kidnapping, and tampering with evidence.
 {¶ 23} Third, appellant contends that the trial court erred by ordering consecutive sentences without making the appropriate findings, and the reasons in support thereof, as required by R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c), on the record.
 {¶ 24} In a case involving multiple prison terms for multiple convictions, a trial court cannot, pursuant to R.C. 2929.14(E)(4), order that these terms are to be served consecutively unless the court "`finds' three statutory factors." State v. Comer at ¶ 13. First, the court must find "that the consecutive service is necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(E). Second, the court must find "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Id. Third, the court must find that one of the following is applicable:
 {¶ 25} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.19 of the Revised Code, or was under post-release control for the prior offense.
 {¶ 26} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as a part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 27} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." Id.
 {¶ 28} In imposing consecutive sentences, the trial judge must state these statutory findings and the reasons for those consecutive sentences on the record at the sentencing hearing, State v. Comer at ¶ 13 and ¶ 14.
 {¶ 29} Here, the trial judge expressed the essential findings at the sentencing hearing. He found that the consecutive sentences were necessary to protect the public from future crime and to punish the offender. He also stated that consecutive sentences are not disproportionate to the seriousness of appellant's conduct. In making these findings, the court referred to the facts as set forth in the record and confirmed by appellant. The trial judge then continued, stating:
 {¶ 30} "[B]ased upon the facts previously recited, that the harm caused by the multiple offenses was so great and so unusual, especially the many, many hours that Mr. Smith suffered, that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of Miss Ulsh's conduct."
 {¶ 31} Because the common pleas court articulated both its findings and reasons, we can find no error in the imposition of consecutive sentences.
 {¶ 32} Therefore, appellant's sole assignment of error is found not well-taken, and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
 Judgment affirmed.