DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction for aggravated murder and related charges entered on a guilty plea in the Wood County Court of Common Pleas. Because we conclude that appellant's plea was knowingly and intelligently entered and that he was not denied effective assistance of counsel, we affirm.
 {¶ 2} The facts of this matter are more fully discussed in the decisions involving codefendants Tabitha Ulsh and Joseph Alexander. State v. Ulsh, 6th Dist. No. WD-02-053,2003-Ohio-5972; State v. Alexander, 6th Dist. No. WD-02-047, 2003-Ohio-6969.
 {¶ 3} In this matter, appellant is Jimmie Gene Woodland In the summer of 2001, appellant and his girlfriend, Ulsh, concocted a plan of sorts. According to appellant, Ulsh was, "* * * to go to a bar, meet someone, get him back, take him back to their house, rob them, come back and get me, and we were to go and steal a car."
 {¶ 4} On July 20, 2001, Fred Smith was in Findlay, Ohio, to shoot trap. That night he encountered Ulsh at a Findlay bar. In conformity with the plan, Ulsh slipped something into Smith's drink. Ulsh left the bar with Smith in Smith's SUV and drove to appellant's mother's home in Fostoria, Ohio.
 {¶ 5} Appellant insists that when Ulsh arrived he had been drinking for some time and was profoundly intoxicated. Smith, however, regained consciousness and bolted from the car. Appellant chased him down. Appellant and his brother then beat Smith into unconsciousness, and loaded his body into the back of Smith's SUV.
 {¶ 6} Ulsh and appellant drove Smith into a rural portion of Wood County near Cygnet. During the drive, Smith again became conscious, but appellant again beat him into unconsciousness. According to appellant, in Wood County Ulsh took one of the two shovels she had purchased and beat Smith to death.[1] The two then dug a hole and buried Smith's body. The two took Smith's credit cards and his car and went to Mexico.
 {¶ 7} Appellant and Ulsh were arrested a few weeks later. Appellant was the subject of a five-count indictment, charging him with one count of aggravated murder with capital specifications, felonious assault, aggravated robbery, two counts of kidnapping, and one count of evidence tampering.
 {¶ 8} Appellant initially pled not guilty, but after lengthy negotiations agreed to amend his plea. The state, with the concurrence of the victim's family, agreed to withdraw the death specifications and delete one of the kidnapping counts. Appellant agreed to plead guilty to the amended counts, plus an added felonious assault charge.
 {¶ 9} Following a plea colloquy, the trial court accepted appellant's plea, entered a finding of guilt, and proceeded immediately to sentencing. On the aggravated murder count, the court entered a mandatory sentence of life imprisonment without the possibility of parole for 20 years. On the remaining offenses, the court entered the maximum sentences for each and ordered that all sentences be served consecutively. From this judgment of conviction and sentence, appellant now brings this appeal. Appellant sets forth the following two assignments of error:
 {¶ 10} "I. The trial court erred prejudicially when it failed to conduct a proper colloquy as to appellant's waiver of his right to a jury trial.
 {¶ 11} "II. Appellant received ineffective assistance of counsel at sentencing, where counsel failed to object to the trial court's consideration of improper matters in determining whether appellant should be sentenced to the maximum permissible sentence on various counts."
 Guilty Plea {¶ 12} In his first assignment of error, appellant contends that his guilty plea was not voluntarily tendered because in accepting the plea the trial court failed to inform appellant of certain rights relating to the jury trial waived by such a plea. Specifically, appellant insists that he should have been informed that a jury is composed of 12 members, that the defendant may participate in jury selection and that the jury verdict must be unanimous. In support of this proposition appellant cites U.S.v. Martin (C.A. 6, 1983), 704 F.2d 267, State v. Ruppert
(1978), 54 Ohio St.2d 263, and State v. Bays (1999),87 Ohio St.3d 15.
 {¶ 13} A guilty plea waives all claims of the deprivation of constitutional rights which might have occurred prior to the plea. State v. Spates (1992), 64 Ohio St.3d 269, 272. The only attack which may be launched following a guilty plea is on the voluntary and intelligent character of the plea itself. The inquiry "* * * entails a review of the record to ensure that Crim.R. 11 was followed by the trial court upon the defendant's submission of the guilty plea." Id., citing State v. Kelley
(1991), 57 Ohio St.3d 127, 129.
 {¶ 14} Crim.R. 11(C)(2) provides:
 {¶ 15} "In felony cases the court * * * shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 {¶ 16} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 {¶ 17} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 18} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 19} We have carefully examined the plea colloquy in this matter and find the court in full compliance with the rule. Moreover, appellant executed in open court a detailed written waiver of his rights. See, State v. Muniz, 6th Dist. No. WD-03-032, 2004-Ohio-1659.
 {¶ 20} With respect to appellant's assertion that he should have been informed that a jury is composed of 12 members, we do not find support for that proposition in the cases cited.Martin, Ruppert and Bays are inapposite to this matter because they deal not with a guilty plea but the waiver of a jury in favor of a bench trial or trial to a panel of judges. Consequently, we must conclude that, on the record, there is no evidence that appellant's guilty plea was other than knowingly, voluntarily and intelligently given.
 {¶ 21} Accordingly, appellant's first assignment of error is not well-taken.
 Ineffective Assistance of Counsel {¶ 22} In his second assignment of error, appellant claims that he received ineffective assistance of counsel because his trial counsel failed to object to the trial court's consideration of purportedly improper material in determining that maximum sentences should be imposed.
 {¶ 23} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. * * * Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v.Washington (1984), 466 U.S. 668, 687. Accord State v. Smith
(1985), 17 Ohio St.3d 98, 100.
 {¶ 24} R.C. 2929.14(C) provides that maximum sentences may be imposed only on those offenders deemed to have "committed the worst forms of the offense, * * * offenders who pose the greatest likelihood of committing future crimes * * *" and certain specific others not material here.
 {¶ 25} Appellant does not contest that the appropriate findings for imposing maximum sentences were made. Rather, he suggests that the court considered improper evidence in reaching these findings and that appellant's trial counsel was remiss in failing to object to such erroneous matters.
 {¶ 26} Following the imposition of a life term of imprisonment without parole eligibility for 20 years for aggravated murder, the court turned to the other counts to which appellant pled. Considering the felonious assault, the court stated:
 {¶ 27} "[I]n examining and thinking about Mr. Woodland's testimony here this morning, [the court] finds this was a long and brutal evening; that Mr. Smith was deliberately drugged as part of a deliberate and detailed planning. The Court notes the random selection of the victim. The Court notes that after the course of the evening Mr. Smith escaped only to be beaten and thrown back into his car, and he was again beaten, ultimately murdered. The Court finds that the terror, confusion, and physical pain endured by Mr. Smith for this substantial period of time underlies the brutality of the evening."
 {¶ 28} On these considerations, the court found that appellant had committed the worst form of the offense and that appellant "* * * poses the greatest likelihood of committing future crimes." The court referenced these considerations in whole or in part as the rationale for similar findings on the other four offenses.
 {¶ 29} Appellant argues that the court's analysis was erroneous because each of the offenses should have been considered separately. How, appellant asks rhetorically, can there be a "worst" form of tampering with evidence?
 {¶ 30} It has been held that a trial court reviewing the seriousness of multiple offenses encompassed within a single course of conduct should view the separate offenses collectively.State v. Mushrush (1999), 135 Ohio App.3d 99, 111. In our view, notwithstanding this authority, the plan and ultimate result in this matter are inextricably entwined with each of the offenses appellant committed. To answer appellant's rhetorical question: the "worst" form of evidence tampering occurs when it is part of a course of action designed to conceal a murder. Irrespective of the point at which appellant joined, he was part of a conspiracy to drug, kidnap, rob and ultimately murder the victim. All of the offenses to which appellant pled guilty were in furtherance of that plan. Assault, kidnapping, robbery and evidence concealment in furtherance of a plan leading to murder are certainly the worst forms of those offenses.
 {¶ 31} Appellant also attacks the court's additional finding that appellant poses the greatest likelihood of committing future crimes. However, R.C. 2929.14(C) findings are alternatives, any of which may justify maximum sentences. Even if this complaint had merit, it would be harmless given our conclusion that a "worst form" finding was proper.
 {¶ 32} Trial counsel's failure to object to proper sentencing considerations was not a deficient performance. Consequently, appellant fails to satisfy the first prong of the Strickland
test. Accordingly, appellant's second assignment of error is not well taken.
 {¶ 33} On consideration whereof, the judgment of the Wood County Court of Common Pleas is affirmed. Costs to appellant.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Knepper, J., Lanzinger, J., Singer, J., Concur.
[1] Ulsh maintains that it was appellant who actually struck the death blows. See Ulsh, 2003-Ohio-5972, at ¶ 9.