The STATE of Ohio, Appellee,

v.

MAYNARD, Appellant.

[Cite as *State v. Maynard* (1999), 132 Ohio App.3d 820.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 97CA006908.

Decided March 31, 1999.

*Gregory A. White,* Lorain County Prosecuting Attorney, and *Robert F. Corts,* Assistant Prosecuting Attorney, for appellee.

*John B. Gibbons,* for appellant.

---

CARR, Judge.

Defendant-appellant James Maynard appeals from his conviction and sexual predator adjudication. This court affirms.

## I

In the fall 1996, Jan Welling discovered that her name and phone number had been attached to three pornographic pictures that were posted on the Internet. The first picture was of an unidentified female on her hands and knees having sex with a dog. A caption on the picture gave Welling's name, phone number, and fax number, and read that she will do anything for free, all you need to do is call. The second picture was of another unidentified female who was lying on her back in the nude with her legs spread revealing her vagina. The caption on this picture listed Welling's business and place of employment, provided her area code

and fax number, and read that she likes to make her customers happy. The third picture was of another unidentified female who was bound at the wrists, wearing a garter belt and high heels, and showing her vagina. The caption on the third picture gave Welling's name, phone number, and fax number, and read that she will do anything, no request turned down, accompanied by a request to call her. Welling immediately reported these pictures to the police.

The police contacted the Internet provider to which these pictures had originally been uploaded. The Internet provider indicated that the pictures had been uploaded from Maynard's account. Based on this information, the police obtained a search warrant for Maynard's house.

While executing the search warrant, Maynard gave the police a statement. Maynard indicated that he had previously worked with Welling. Maynard explained that he had been demoted and believed that Welling was somehow responsible for his demotion. Maynard admitted that he had downloaded these three pictures from the Internet, added the captions referring to Welling, and uploaded the pictures back onto the Internet as a way of getting even with Welling.

Pursuant to the search warrant the police confiscated Maynard's computer as evidence. Upon examining the files stored in the memory of Maynard's computer, the police discovered a large number of pornographic pictures portraying a wide variety of sexual acts, including bestiality, group sex, masturbation, sexual masochism, sexual sadism, and coprophilia (the use of feces in sex). Among these pictures, the police discovered a significant amount of child pornography. These pictures depicted several different children ranging in age from eight to fourteen. There were pictures of juvenile females performing fellatio and engaging in vaginal intercourse with adult males. There was a picture of a juvenile male receiving fellatio from an adult female. There were pictures of juvenile males engaging in anal intercourse with adult males. There were pictures of juvenile males and females fondling other juveniles and adults in various states of undress. There was even a picture of a juvenile female who was bound and engaging in vaginal intercourse with a male that was captioned to indicate that it depicted an eight-year-old female being forcibly raped. Although the police could not determine whether Maynard had uploaded any of these other pictures to the Internet, they were able to determine that these pictures had been downloaded to Maynard's computer on several different occasions during the months preceding the investigation.

Based on the foregoing evidence, Maynard was indicted on nine counts. The first three counts all related to the uploading of pornographic pictures containing Welling's name and phone number: count one for pandering obscenity in violation of R.C. 2907.32(A)(1), count two for pandering obscenity in violation of R.C.

2907.32(A)(2), and count three for pandering obscenity in violation of R.C. 2907.32(A)(5). The six remaining counts all related to the possession of child pornography: count four for pandering obscenity involving a minor in violation of R.C. 2907.321(A)(1), count five for pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(1), count six for the illegal use of a minor in nudity oriented material in violation of R.C. 2907.323(A)(1), count seven for pandering obscenity involving a minor in violation of R.C. 2907.321(A)(5), count eight for pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(5), and count nine for illegal use of a minor in nudity oriented material in violation of R.C. 2907.323(A)(3).

After initially pleading not guilty, Maynard eventually pled no contest to all nine counts. The trial court found Maynard guilty on all nine counts and concluded that Maynard was a sexual predator. Maynard was sentenced to imprisonment on all nine counts. Maynard appeals, raising seven assignments of error that have been rearranged for ease of discussion.

## II

Maynard's seventh assignment of error states:

"The trial court erred in imposing a prison sanction because a nonprison sanction would adequately punish the offender and protect the public, as the factors indicat[ing] that James Maynard would not be a repeat offender out weigh [*sic* ] the factors indicating that recidivism is likely."

R.C. 2929.11 sets forth the purposes of felony sentencing:

"(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

"(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

As is clear from this statute, the likelihood that Maynard will repeat this offense is only one of several considerations to be weighed by the trial court.

R.C. 2929.12(A) specifically grants a trial court the "discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code." R.C. 2929.12 then proceeds to set forth some factors for a trial court to consider when exercising this discretion. Additionally, R.C. 2929.12(A) provides that a trial court "may consider any other factors that are relevant to achieving those purposes and principles of sentencing."

In describing the amount of discretion possessed by a trial court in regard to sentencing matters, this court has previously stated:

"Where the trial court's exercise of discretion in sentencing is within statutory limits, the sentence imposed will not be disturbed on appeal. The mere fact that more lenient punishment might also be justified by the same sentencing guidelines does not, by itself, establish an abuse of discretion." (Citations omitted.) *State v. Rippey* (Feb. 7, 1996), Lorain App. No. 95CA006106, unreported, 1996 WL 48537.

■ An abuse of discretion is more than an error of judgment; instead, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137, 566 N.E.2d 1181, 1184.

■ In the instant case, the trial court found that a prison sanction was necessary because the circumstances indicated that Maynard was likely to reoffend. The trial court specifically noted that Maynard showed no genuine remorse and that his crimes involved multiple violations. In Maynard's favor, the trial court also noted that he had never been adjudicated a delinquent child or previously been convicted of or pled guilty to a criminal offense. The trial court also found that a nonprison sanction would demean the seriousness of Maynard's offenses. Specifically, the trial court found that although Maynard did not expect to cause physical harm, his victims suffered serious psychological harm and that Maynard's crimes involved the portrayal of young children engaged in deviant sexual activity.

In light of these findings, this court cannot say that the trial court abused its discretion by sentencing Maynard to prison. The trial court acted within the statutory limits and did not exhibit an attitude that could be characterized as unreasonable, arbitrary, or unconscionable. Maynard's seventh assignment of error is not well taken.

## III

In Maynard's third, fourth, and fifth assignments of error he argues that R.C. Chapter 2950 violates his right to be free from cruel and unusual punishment, his double jeopardy rights, and his right to privacy. This court has previously

rejected all three of these claims. *State v. Steckman* (Feb. 9, 1999), Lorain App. No. 97CA006996, unreported, 1999 WL 61610. As such, assignments of error numbers three, four, and five are not well taken.

## IV

█ Appellant's sixth assignment of error states:

"H.B. 180 and O.R.C. 2950.01 *et seq.* are void for vagueness since they compel a court to make a preponderance determination based upon clear and convincing evidence."

This exact same argument was addressed in *State v. Ward* (1999), 130 Ohio App.3d 551, 720 N.E.2d 603. In *Ward,* as in the instant case, the appellant asserted that R.C. Chapter 2950 was void for vagueness because "the R.C. 2950.09(E) task of judging by clear and convincing evidence whether an offender is 'likely' to commit a sexually oriented offense in the future illogically asks the court to determine whether it is highly probable (based on the clear-and-convincing-evidence standard) that a mere probability exists." (Footnote omitted.) *Id.,* 130 Ohio App.3d at 567–568, 720 N.E.2d at 615.

The *Ward* court rejected this argument, concluding:

"Two separate concepts are embodied in defendant's argument—the likelihood of future conduct and burden of proof required to ascertain whether that future conduct will occur. The likelihood of future conduct and the burden of proof are conceptually distinct ideas that do not conflict in a way that would make the statute unconstitutionally vague." *Id.,* 130 Ohio App.3d at 569, 720 N.E.2d at 616.

This court agrees with the reasoning of the *Ward* court. Maynard's sixth assignment of error is not well taken.

## V

Maynard's first assignment of error raises several specific challenges to the evidence supporting the sexual predator adjudication.

## A

First, Maynard argues that the trial court improperly relied on testimony from a police captain with no special expertise in computers, regarding the downloading, storing, altering, and uploading of computer images. However, Maynard never objected to the police captain's testimony on the grounds that he was not qualified as an expert in computers. Therefore, this argument will only be reviewed for plain error. See Crim.R. 52(B).

■ Plain error has been defined as "an obvious error which is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings." *State v. Craft* (1977), 52 Ohio App.2d 1, 6 O.O.3d 1, 367 N.E.2d 1221, paragraph one of the syllabus. Because the Ohio Rules of Evidence do not apply to sentencing hearings, Evid.R. 101(C)(3), this court would be hard-pressed to find any error herein, let alone an error that would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings. Maynard's first argument is not well taken.

### B

Second, Maynard argues that the only evidence before the trial court was the facts of the offenses for which he was to be sentenced. Maynard argues that the trial court could not properly determine from those facts alone that he was likely to reoffend.

However, in *State v. Boner* (Aug. 14, 1998), Hamilton App. No. C–970422, unreported, 1998 WL 472024, the court referred solely to the defendant's two convictions for rape and found that this evidence was sufficient to conclude that the defendant was likely to reoffend. Similarly, in *State v. Daniels* (Feb. 24, 1998), Franklin App. No. 97APA06–830, unreported, 1998 WL 85882, the defendant was convicted of one act of gross sexual imposition with a four-year-old girl, was ordered to complete a course of sexual abuse counseling, and failed to complete the sexual abuse counseling. The trial court specifically relied on the age of the victim and the defendant's failure to complete sexual abuse counseling in making its determination that the defendant was a sexual predator. The *Daniels* court found that this single conviction was sufficient to conclude that the defendant was likely to reoffend. The *Daniels* court specifically noted:

"[T]he overwhelming statistical evidence support[s] the high potential of recidivism among sex offenders whose crimes involve the exploitation of young children. The age of the victim is probative because it serves as a telling indicator of the depths of [the] offender's inability to refrain from such illegal conduct. The sexual molestation of young children, aside from its categorization as criminal conduct in every civilized society with a cognizable criminal code, is widely viewed as one of the most, if not the most, reprehensible crimes in our society. Any offender disregarding this universal legal and moral reprobation demonstrates such a lack of restraint that the risk of recidivism must be viewed as considerable." (Citations omitted.)

■ In the instant case, Maynard had downloaded and stored dozens of pictures that graphically depicted young children engaging in all manner of

deviant sexual activities. One of these pictures was specifically labeled as depicting an eight-year-old female being forcibly raped. In addition to the graphic nature of the materials possessed by Maynard, the trial court had before it a presentence investigation report. In light of this information, there was sufficient evidence to permit the trial court to find that Maynard was likely to reoffend. Maynard's second argument is not well taken.

## C

Third, Maynard argues that the trial court improperly focused exclusively on R.C. 2950.09(B)(2)(d) and (h). However, the fact that the trial court specifically referred to only a limited number of the enumerated factors is of no consequence. The Supreme Court of Ohio has already determined that "[t]he statute does not require the court to list the criteria." *State v. Cook* (1998), 83 Ohio St.3d 404, 426, 700 N.E.2d 570, 588. Maynard's third argument is not well taken.

## D

Fourth, Maynard argues that the trial court misinterpreted the statute by applying R.C. 2950.09(B)(2)(h), involving the "nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim." Maynard argues that R.C. 2950.09(B)(2)(h) contemplates actual physical contact with the victim; therefore, the trial court could not have properly relied on R.C. 2950.09(B)(2)(h) in this case. However, any alleged error in this regard would be harmless because, as noted above, there was sufficient evidence addressing the remaining factors to justify the trial court's ultimate conclusion. Maynard's fourth argument is not well taken.

## E

Last, Maynard argues that the sexually oriented offenses for which he was to be sentenced did not involve any "victims" within the meaning of R.C. 2950.09(B)(2)(d) and (h). Maynard's argument in this regard boils down to an assertion that children are not victimized by the mere possession of pornography in which they are depicted. This court strongly disagrees.

Both the Supreme Court of the United States and the Supreme Court of Ohio have found unequivocally that children are seriously harmed by the mere possession of pornography in which they are depicted. In *State v. Meadows* (1986), 28 Ohio St.3d 43, 28 OBR 146, 503 N.E.2d 697, syllabus, the Supreme Court of Ohio held that a statute criminalizing the mere possession of child pornography did not violate the First Amendment. The *Meadows* court described its task as balancing the individual's "important First Amendment

freedom with the state's admitted interest of protecting its children from the shocking injuries caused by the sexual abuse of children which the state insists will occur if possession of child pornography is countenanced by the law." *Id.* at 47, 28 OBR at 149, 503 N.E.2d at 701, fn. 4. The *Meadows* court then proceeded to describe the injuries created by the possession and dissemination of child pornography:

"For instance, the [Supreme Court of the United States in *New York v. Ferber* (1982), 458 U.S. 747, 758, 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113, 1123] observed that '[t]he legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional and mental health of the child.' * * * The *Ferber* court found that the existence of photographs 'depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled.' *Id.* [458 U.S.] at 759 [102 S.Ct. at 3355–3356, 73 L.Ed.2d at 1124].

"The court also discerned that state efforts directed at the banning of production would not adequately solve the dilemma. The hidden reality of the child pornography industry makes it 'difficult, if not impossible, to halt the exploitation of children by pursuing only those who produce * * *.' *Id.* [458 U.S.] at 759–760 [102 S.Ct. at 3356, 73 L.Ed.2d at 1124]. In this regard, we note that the possessor's desire to maintain depictions of child abuse also 'provide[s] an economic motive for and * * * [is] thus an integral part of the production of such materials, an activity illegal throughout the Nation.' *Id.* [458 U.S.] at 761 [102 S.Ct. at 3357, 73 L.Ed.2d at 1125]. A flourishing home market for such abusive materials will help guarantee that there will be additional victimization of children. * * *

"* * *

"* * * [C]hild pornography involves, by its nature, the physical, mental and sexual abuse, seduction and harmful exploitation of children. The depictions sought to be banned by the state are but memorializations of cruel mistreatment and unlawful conduct. Additionally, such material would continue to exploit and victimize the children shown by haunting them in the future." (Footnote omitted.) *Meadows, supra,* at 49–50, 28 OBR at 151–152, 503 N.E.2d at 702–703.

The *Meadows* court further noted:

" ' "[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography." Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981).

" 'See also Child Exploitation 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions"); Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U. Mich. J. Law Reform 295, 301 (1979) (hereafter cited as Use in Pornography) (interview with child psychiatrist) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child").' " *Id.*, at 50, 28 OBR at 152, 503 N.E.2d at 703, fn. 8, quoting *Ferber*, 458 U.S. at 760, 102 S.Ct. at 3356, 73 L.Ed.2d at 1124, fn. 10.

Subsequent to *Meadows*, in *Osborne v. Ohio* (1990), 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98, the Supreme Court of the United States upheld Ohio's ban on possession of child pornography, finding:

"[F]irst, * * * the materials produced by child pornographers permanently record the victim's abuse. The pornography's continued existence causes the child victims continuing harm by haunting the children in years to come. * * * The State's ban on possession and viewing encourages the possessors of these materials to destroy them. Second, encouraging the destruction of these materials is also desirable because evidence suggests that pedophiles use child pornography to seduce other children into sexual activity." (Footnote omitted.) *Id.* at 111, 110 S.Ct. at 1697, 109 L.Ed.2d at 110.

Like the Supreme Court of the United States and the Supreme Court of Ohio, this court finds that the children depicted in pornographic materials are clearly victimized by the continued possession of such materials. Maynard's arguments to the contrary are simply offensive.

Maynard's first assignment of error is not well taken.

## VI

Maynard's second assignment of error generally challenges the sufficiency of the evidence supporting the sexual predator adjudication. Based on the discussion of Maynard's first assignment of error, this court finds that the evidence

presented was sufficient to support a finding that Maynard is a sexual predator. Maynard's second assignment of error is not well taken.

*Judgment affirmed.*

BAIRD, P.J., and MAHONEY, J., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.