This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant, Ronald Paxton, appeals from his convictions in the Lorain County Court of Common Pleas for felonious sexual penetration, rape, and gross sexual imposition. We affirm.
On September 20, 2000, the Lorain County Grand Jury indicted Defendant on three separate counts: (1) felonious sexual penetration, in violation of R.C. 2907.12(A)(1)(b); (2) rape, in violation of R.C. 2907.02(A)(2); and (3) gross sexual imposition, in violation of R.C. 2907.05(A)(4). Subsequently, a supplemental indictment was filed, wherein the grand jury indicted Defendant on a fourth count: rape, in violation of R.C.2907.02(A)(2). Following the State's case-in-chief, Defendant made a Crim.R. 29 motion for acquittal, which the trial court denied. Defendant renewed his Crim.R. 29 motion after he presented his case-in-chief, but the trial court again denied his motion. The jury found Defendant guilty of felonious sexual penetration, rape, as contained in the supplemental indictment, and gross sexual imposition. The trial court dismissed the rape charge, as contained in the original indictment, and sentenced Defendant accordingly. Defendant has timely appealed raising six assignments error. We will address assignment of error three and four together as they concern similar issues of law and fact.
 ASSIGNMENT OF ERROR I The trial court erred to [Defendant's] prejudice in violation of the Fifth and Fourteenth Amendment to the United States Constitution and Article One, Section Ten and Sixteen of the Ohio Constitution in its ruling regarding the Lorain County Children Services records[.]
In his first assignment of error, Defendant avers that he was prejudiced by the trial court's ruling regarding the Lorain County Children Services (LCCS) records. We disagree.
The record indicates that the trial court reviewed the LCCS records prior to trial and did not find the records "particularly relevant and/or exculpatory and/or discoverable[.]" As such, Defendant was not permitted to use these records during the cross-examination of Dawn Coleman ("Dawn") or Holly Paxton ("Holly"). Following the testimony of Dawn and Holly, Defendant objected and argued that the LCCS records "may have been pertinent and assisted Counsel in the examination of these witnesses." In response to Defendant's objection, the trial court later permitted Defendant to recall any witness. However, Defendant did "not wish * * * to have these witnesses recalled[.]" Consequently, we find that Defendant has waived this argument and cannot now assert error when the record reveals he was given an opportunity to recall the witnesses and declined. See State v. Armour (Dec. 19, 1991), Cuyahoga App. No. 59064, unreported, 1991 Ohio App. LEXIS 6098, at *28; State v. Williams (July 3, 1990), Jefferson App. No. 88-J-26, unreported, 1990 Ohio App. LEXIS 2797, at *14. Accordingly, Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II The trial court erred to [Defendant's] prejudice in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution [and] Article [One,] Sections [Ten] and [Sixteen] of the Ohio Constitution by admitting the testimony of Detective Yost, and by denying [Defendant] access to the police incident report.
In his second assignment of error, Defendant argues that the trial court erred regarding evidentiary issues. Specifically, Defendant claims the following: (1) the trial court erroneously permitted Detective Yost to testify concerning statements made by Defendant and others; (2) the trial court erroneously allowed Detective Yost to speculate on direct examination; and (3) the trial court denied Defendant's request to examine Detective Yost's police reports. Defendant's argument is not well taken. We will address, in turn, each piece of evidence.
 Detective Yost's testimony concerning statements made by Defendant and others
 In this case, Defendant fails to support his challenge to the admission of
Detective Yost's testimony concerning statements made by Defendant and others with specific references to portions of the record. "It is the duty of the [defendant], not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." (Emphasis added). State v. Taylor
(Feb. 9, 1999), Medina App. No. 2783-M, unreported, at 7. See, also, App.R. 16(A)(7). This court will not guess at undeveloped claims on appeal. Elyria Joint Venture v. Boardwalk Fries, Inc. (Jan. 3, 2001), Lorain App. No. 99CA007336, unreported, at 6. Accordingly, we overrule this portion of the assignment of error.
 2. Detective Yost's alleged speculative statements
A trial court has broad discretion to admit or exclude evidence. Statev. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, absent an abuse of discretion, an appellate court will not disturb a decision of a trial court. Id. at 182. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
A party challenging the admission of evidence must timely object and state the specific grounds for the objection in order to preserve the error for appeal. Evid.R. 103(A)(1). Failure to timely object waives the opportunity for appellate review of any issue not preserved. State v.Self (1990), 56 Ohio St.3d 73, 81; State v. Heilman (Sept. 21, 1994), Medina App. No. 2312-M, unreported, at 3. We note that Defendant has challenged portions of the record in which he failed to assert an objection. As such, our review is limited to those statements to which Defendant objected at trial.
Upon a review of the record, we do not find that the testimony elicited from Detective Yost was speculative. Consequently, we cannot say that the trial court abused its discretion in admitting Detective Yost's testimony. Accordingly, this segment of Defendant's assignment of error is overruled.
 3. Detective Yost's police reports
Crim.R. 16(B)(2) states:
 Except as provided in subsections (B)(1)(a), (b), (d), (f), and (g), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents in connection with the investigation or prosecution of the case, or of statements made by witnesses or prospective witnesses to state agents.
In the case sub judice, the record indicates that Defendant requested access to Detective Yost's police reports to ensure that his testimony coincided with these reports. Furthermore, the record shows that the trial court reviewed Detective Yost's reports and determined that Detective Yost's testimony was consistent with his reports. "If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon." Crim.R. 16(B)(1)(g). Consequently, we cannot say that the trial court erred in prohibiting Defendant access to Detective Yost's reports. Accordingly, this portion of the assignment of error is overruled. Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III The trial court erred to the prejudice of [Defendant] in violation of [Crim.R.] 29[,] Article [One,] Section [Ten] of the Ohio Constitution and the due process clause of the Constitution of the United States when it denied [Defendant's] motions for acquittal.
 ASSIGNMENT OF ERROR IV The trial court erred to the prejudice of [Defendant] when it entered judgement [sic.] of conviction, where such judgment was against the manifest weight of the evidence.
In his third and fourth assignments of error, Defendant challenges the adequacy of the evidence presented at trial. Specifically, Defendant avers that the State failed to present sufficient evidence to support the trial court's denial of his Crim.R. 29 motion for acquittal and that his convictions for felonious sexual penetration, rape, and gross sexual imposition were against the manifest weight of the evidence. An evaluation of the weight of the evidence, however, is dispositive of both issues in this case. Defendant's assignments of error lack merit.
As a preliminary matter, we note that sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380,386.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy."Thompkins, 78 Ohio St.3d at 386.
"While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion."State v. Gulley (Mar. 15, 2000), Summit App. No. 19600, unreported, at 3, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.
(Emphasis omitted). State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4.
Defendant was found guilty of felonious sexual penetration, in violation of R.C. 2907.12(A)(1)(b), which states in relevant part "[n]o person without privilege to do so shall insert any part of the body, or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age[.]" The jury also found Defendant guilty of rape, in violation of R.C. 2907.02(A)(2), which provides "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Lastly, Defendant was convicted of gross sexual imposition, in violation of R.C. 2907.05(A)(4), which states in pertinent part "[n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [t]he other person * * * is less than thirteen years of age[.]" Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
At trial, Dawn testified that Defendant began molesting her between the ages of four and five, and it continued until she was approximately nine years old. She further testified that the molestation consisted of fondling her genital area, rubbing her chest, performing oral sex, and penetrating her digitally. Dawn stated Defendant would enter her room at night while the remaining household members were asleep. She approximated that Defendant entered her room two to three times a week; however, after the age of eight, she stated that Defendant entered her room one night a week. Dawn testified that the last sexual encounter occurred near her ninth birthday.
Dawn acknowledged that she did not tell anyone that Defendant had been molesting her, and explained that Defendant had threatened her safety and her family's safety if she disclosed his actions to anyone. However, prior to her eleventh birthday, Dawn told Holly, her mother, that she had been molested by Defendant. She also stated that Defendant had touched her brother, Michael Paxton ("Michael").
Holly testified that Defendant "somehow treat[ed] Dawn different." Holly stated that Dawn told her Defendant had been molesting her, and Dawn sobbed as she recounted the events. Holly further stated that she asked Defendant "if he had molested [her] daughter" and he responded affirmatively. However, Holly said that Defendant additionally declared "I didn't actually molest her. She molested me."
Holly testified that she did not call the police to report Defendant's actions because Defendant threatened to burn down the house and she did not have enough money to move out. Holly also stated she had two children with Defendant, namely, Michael and Michelle Paxton ("Michelle"). She said Michael and Michelle accused Defendant of touching them as well; however, they later declared that their accusations were lies.
Detective Karl Yost testified Dawn's behavior was consistent with other victims he had encountered. He further stated that Dawn told him that she was scared of Defendant, but she eventually was able to stand up to him. Detective Yost declared that Defendant told him that Dawn was the initiator; specifically, Defendant said that Dawn would lie on top of him and put her hands down his pants. Detective Yost noted that he suspected Defendant was less than truthful. Moreover, Detective Yost stated that Defendant maintained a calm demeanor when discussing Dawn's allegations. Lastly, Detective Yost relayed that Defendant did not respond when asked what he did when Dawn put her hands down his pants.
Michael testified that he told Holly that Defendant had sexual contact with him, but his assertion was a lie. He further testified that he wanted to "help" Defendant. Finally, Michael stated that he does not know what happened between Dawn and Defendant, but he was angry at Dawn for claiming that Defendant touched her in a sexual way.
Defendant argued that the State's witnesses were not credible. As such, Defendant asserted that the evidence did not support his conviction for felonious sexual penetration, rape, or gross sexual imposition.
In the case sub judice, the jury had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we must give deference to the jurors' judgments. See State v. Lawrence (Dec. 1, 1999), Lorain App. No. 98CA007118, unreported, at 13. Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting Defendant of felonious sexual penetration, rape, and gross sexual imposition. Consequently, we conclude that Defendant's assertion that the State did not produce sufficient evidence to support a conviction, therefore, is also without merit. Accordingly, Defendant's third and fourth assignments of error are overruled.
 ASSIGNMENT OF ERROR V [Defendant] was deprived of his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article [One,] Section [Ten] of the Ohio Constitution[.]
In his fifth assignment of error, Defendant contends that his counsel's failure to recall witnesses for impeachment purposes denied him effective assistance of counsel, in violation of the United States and Ohio Constitution. Defendant's contention lacks merit.
The United States Supreme Court enunciated a two-part test to determine whether counsel's assistance was ineffective as to justify a reversal of sentence or conviction. Strickland v. Washington (1984), 466 U.S. 668,687, 80 L.Ed.2d 674, 693. "First, the defendant must show that counsel's performance was deficient." Id. To show the deficiencies in counsel's performance, a defendant must prove "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment." Id. Second, a defendant must establish that counsel's deficient performance resulted in prejudice to the defendant which was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
Upon reviewing counsel's performance, there is a strong presumption that counsel's actions were part of a valid trial strategy. Id. at 689,80 L.Ed.2d at 694. We note that there are numerous avenues in which counsel can provide effective assistance of counsel in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49; State v.Gales (Nov. 22, 2000), Lorain App. No. 00CA007541, unreported, at 17. Accordingly, "[d]ecisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics" and absent a showing of prejudice, the failure to call witnesses will not be deemed erroneous.State v. Coulter (1992), 75 Ohio App.3d 219, 230; State v. Hunt (1984),20 Ohio App.3d 310, 312.
Defendant argues that the State presented witnesses whose credibility was questionable; therefore, his counsel should have countered their testimony with the LCCS records. However, the record indicates that defense counsel thoroughly cross-examined the State's witnesses. Moreover, Defendant has failed to illustrate to this court how he has been prejudiced by his attorney's actions. Specifically, Defendant argues that "this evidence could have been crucial for the defense" and "there is a reasonable probability that the outcome could have been
different[.]" (Emphasis added). Consequently, we find that counsel's performance did not constitute ineffective assistance of counsel. Accordingly, Defendant's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR VI The trial court erred to [Defendant's] prejudice in violation of the Fourteenth Amendment to the United States Constitution and Article One[,] Section Ten and Sixteen of the Ohio Constitution by adjudicating [Defendant] a sexual predator in the absence of clear and convincing evidence.
In his sixth assignment of error, Defendant alleges that his classification as a sexual predator, pursuant to R.C. 2950.09, was not supported by clear and convincing evidence. Additionally, Defendant alleges that R.C. 2950.09 violates the United States and Ohio Constitution. We disagree.
A sexual predator is a person who has "been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). In determining whether the defendant is likely to reoffend, the trial court must consider all relevant factors, including, but not limited to:
(a) The offender's age;
 (b)The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
R.C. 2950.09(B)(2).
The State bears the burden of proving by clear and convincing evidence that the defendant is likely to reoffend. R.C. 2950.09(B)(3). Clear and convincing evidence is the level of proof greater than a "preponderance of the evidence," but less than the certainty of "beyond a reasonable doubt" as required by criminal cases. State v. Schiebel (1990),55 Ohio St.3d 71, 74, citing Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
This court has previously stated that the trial court need not mention each factor in its sexual predator determination, but only consider each factor in its determination. See State v. Alexander (Apr. 14, 1999), Summit App. No. 18823, unreported, at 7. Furthermore, the factors need not be weighed or balanced, nor does the determination of sexual predator status demand that a majority of the factors listed weigh against the defendant. State v. Francis (June 16, 1999), Summit App. No. 18791, unreported, at 6.
Additionally, the tender age of the victim may be regarded as inherently indicative of a strong likelihood to reoffend, as seen by the following:
 [T]he overwhelming statistical evidence support[s] the high potential of recidivism among sex offenders whose crimes involve the exploitation of young children. The age of the victim is probative because it serves as a telling indicator of the depths of [the] offender's inability to refrain from such illegal conduct. The sexual molestation of young children, aside from its categorization as criminal conduct in every civilized society with a cognizable criminal code, is widely viewed as one of the most, if not the most, reprehensible crimes in our society. Any offender disregarding this universal and moral reprobation demonstrates such a lack of restraint that the risk of recidivism must be viewed as considerable.
State v. Maynard (1999), 132 Ohio App.3d 820, 826, quoting State v.Daniels (Feb. 24, 1998), Franklin App. No. 97APA06-830, unreported.
At the hearing, the State presented evidence that Defendant had been convicted of the following misdemeanors: (1) resisting arrest; (2) assaulting a police officer; (3) domestic violence; (4) child endangerment; and (5) driving while under the influence. Additionally, the State reiterated the age difference between Dawn and Defendant; specifically, the abuse occurred when Dawn was between the ages of four and nine and Defendant was in his thirties. Moreover, the State stressed the length of time the abuse occurred and the nature of the conduct. Defendant did not present any evidence in response, but rather challenged the constitutionality of R.C. 2950.09.
The trial court determined that Defendant was a sexual predator based upon the ages of Dawn and Defendant, Defendant's prior criminal record, the violent nature of several of his convicted offenses, the nature of the sexual conduct, the pattern of abuse, and the occasional violence Defendant exhibited toward Dawn. Based upon the evidence presented, we hold that there was clear and convincing evidence before the trial court to support its determination that Defendant was likely to reoffend and should be adjudicated a sexual predator.
Defendant also alleges that R.C. 2950.09 violates the following constitutional protections: (1) equal protection clause; (2) due process clause; (3) void for vagueness provision; (4) ex post facto clause; (5) cruel and unusual punishment; (6) double jeopardy; (7) right to privacy; and (8) bill of attainder. However, R.C. 2950.09 has been found to be constitutional on all grounds raised by Defendant. State v. Jameson
(Apr. 22, 1998), Lorain App. No. 97CA006704, unreported, at 6-12 (holding R.C. 2950.09 does not violate the equal protection clause, due process clause, or void for vagueness provision); State v. Nuckols (Aug. 26, 1998), Wayne App. No. 97CA0076, unreported, at 17 (asserting R.C. 2950.09
does not constitute cruel and unusual punishment); State v. DeAngelo
(Mar. 10, 1999), Lorain App. No. 97CA006902, unreported, at 2 (stating R.C. 2950.09 does not violate the ex post facto clause); State v. Criss
(Jan. 12, 2000), Summit App. No. 19298, unreported, at 10-12 (declaring R.C. 2950.09 does not interfere with privacy rights); State v. Lowe
(Mar. 31, 1999), Summit App. No. 18793, unreported, at 3 (holding R.C.2950.09 does not violate double jeopardy clause); State v. Williams
(2000), 88 Ohio St.3d 513, 528 (finding R.C. 2950.09 does not violate the bill of attainder clause). Accordingly, Defendant's sixth assignment of error is overruled.
Defendant's assignments of error are overruled. The convictions in the Lorain County Court of Common Pleas are affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BATCHELDER, P.J., BAIRD, J. CONCUR.