OPINION
{¶ 1} Defendant-appellant Scott Sifinski appeals the October 27, 2004 Judgment Entry entered by the Stark County Court of Common Pleas which adjudicated him a sexual predator. Plaintiff-appellee is the State of Ohio.
 {¶ 2} On February 13, 1995, the Stark County Grand Jury indicted appellant on one count of rape and one count of gross sexual imposition. Appellant entered pleas of not guilty to the charges and requested a competency evaluation. Appellant was found competent to stand trial.
 {¶ 3} The State amended the charges against appellant to one count of attempted rape in violation of R.C. 2907.02, a felony of the second degree and one count of gross sexual imposition in violation of R.C.2907.05, a felony of the third degree. Appellant appeared before the trial court on September 5, 1995, and entered pleas of guilty to the amended charges. The trial court sentenced appellant to aggregate prison term of four to fifteen years.
 {¶ 4} On September 2, 2004, the trial court ordered appellant to undergo a sexual predator risk assessment at Melymbrosia. Upon receipt of the evaluation, the trial court scheduled a hearing pursuant to R.C.2950.09.
 {¶ 5} At the classification hearing, Steve Dean, a psychologist with Melymbrosia, testified he participated in the risk assessment evaluation of appellant. Dean completed the psychological evaluation. His colleague, Philip Heagerty, conducted the risk assessment. In conducting the evaluation, Dean interviewed the appellant. Dean further reviewed the following documents: the interview between appellant and detectives with the Canton City Police Department; the report prepared by the psychologist who conducted the competency evaluation; a copy of the Belmont Correctional Institute Sexual Predator Screening; a copy of the victim's impact statement completed by the victim assistant coordinator; a copy of the Stark County Department of Jobs Family Services Intake Report Worksheet; copies of the contacts made during the investigation by the Stark County Department of Jobs Family Services in regard to appellant's case; and copies of the judgment entries and court decisions relevant to the appellant's case.
 {¶ 6} Dean administered the Millon Clinical Multiaxle Inventory "(MCMI-III)"; the Hare Psychopathy Checklist-Revised; the Shipley Institute of Living Scale; and a Static-99 test. The appellant's score on the Hare portion of the evaluation was low which suggests he does not have many of the traits of a traditional psychopath. Dean's report indicates that appellant responded to items in a defensive manner and was guarded while completing the MCMI-III. As a result, a number of the clinical scales appear to have been understated in the direction of looking better psychologically adjusted; therefore the results from MCMI-III do not appear to be valid. Dean testified that appellant received a Static-99 test score of four based on the following factors: he has never lived in a committed relationship longer than two years; his victim was unrelated; a stranger; and male. Dean opined that individuals with these characteristics on average sexually re-offend at a five-year post release rate of 26% and at a fifteen-year post release date at 36%. The psychological report further indicates a Static-99 score of four places appellant in the moderate-to-high risk category for recidivism relevant to other adult male sexual offenders. Dean opined that the Static-99 score fairly represents appellant at this time.
 {¶ 7} The risk evaluation further provides other factors for violent re-offending found with appellant but not contained in Static-99 test. Those factors include a history of childhood abuse; an unstable parental home environment; a current age prior to his fourth decade; as yet undefined parole plan with regard to the elements of risk; and that appellant struggles with issues of impulsivity. Other factors of significance as it concerns a potential for sexual re-offending include: a victim under the age of 13; a negative relationship with his mother; and failure to complete a sexual offender treatment program. Further appellant's attitude favoring or being tolerant of such activity are potential risk issues.
 {¶ 8} The court also received testimony from the investigating Canton City Police officer concerning the facts underlying appellant's conviction. Appellant's statement to the police made at the time of his arrest for these offenses was submitted into evidence at the hearing by the State.
 {¶ 9} Appellant did not testify or submit evidence on his own behalf. At the conclusion of the hearing the trial court adjudicated appellant to be a sexual predator. It is from this judgment entry appellant appeals raising as his sole assignment of error:
 {¶ 10} I. There was no clear and convincing evidence to require the classification of the appellant as a sexual predator."
 I. {¶ 11} In his Sole Assignment of Error appellant asserts that the trial court's determination that he be classified as a sexual predator was against the manifest weight of the evidence. We disagree.
 {¶ 12} In State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291, the Supreme Court of Ohio determined R.C. Chapter 2950 is remedial in nature and not punitive. As such, we will review this assignment of error under the standard of review contained in C.E. Morris Co. v. Foley Construction
(1978), 54 Ohio St. 2d 279. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.
 {¶ 13} Revised Code § 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Revised Code § 2950.09(B) (3) sets forth the relevant factors a trial court is to consider in making its determination:
 {¶ 14} "(3) In making a determination . . . as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 15} "(a) The offender's or delinquent child's age;
 {¶ 16} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 17} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 18} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 19} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 20} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 21} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 22} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 23} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 24} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 25} The trial court shall determine an offender to be a sexual predator only if the evidence presented convinces the trial court by clear and convincing evidence. R.C. § 2950.09(C) (2) (b). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate; being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal. Cross v. Ledford (1954), 161 Ohio St. 469, 477,120 N.E.2d 118, 123.
 {¶ 26} In State v. Eppinger (2001), 91 Ohio St.3d 158, 2001-Ohio-247,743 N.E.2d 881, the Court noted; "under certain circumstances, it is possible that one sexually oriented conviction alone can support a sexual predator adjudication." Id. at 162, 743 N.E.2d at 881. The Court cautioned, however, "[b]ut a person who has been convicted of or who has pled guilty to committing one sexually oriented offense is not necessarily likely to engage in the future in one or more sexually oriented offenses. One sexually oriented offense is not a clear predictor of whether that person is likely to engage in the future in one or more sexually oriented offenses, particularly if the offender is not a pedophile. Thus, we recognize that one sexually oriented conviction, without more, may not predict future behavior." (Id).
 {¶ 27} The Ohio Supreme Court's decision in Thompson has removed all doubt as to the trial court's expansive fact-finding function in sexual predator classifications. The Supreme Court stated:
 {¶ 28} "The guidelines also do not provide an exclusive list of factors to consider when determining whether an offender is a sexual predator. This is evidenced by the General Assembly's use of the phrase directing courts to `consider all relevant factors, including, but notlimited to, all of the following [factors].' R.C. 2950.09(B) (2). * * * The phrase `including, but not limited to' indicates that what follows is a nonexhaustive list of examples. Thus, the `factors' enumerated in R.C.2950.09(B) (2) are merely a nonexhaustive list of examples that a court must consider in a sexual predator hearing. Accordingly, a judge may consider evidence other than those factors listed in R.C. 2950.09(B) (2) that he or she believes is relevant to determining recidivism". (Emphasis added). (Citations omitted). 92 Ohio St.3d at 281, 750 N.E.2d 90.
 {¶ 29} In the case at bar, the trial court noted that the age of the intended victim was twelve. Ohio Courts have emphasized the inherent gravity of sexual offenses against minors:
 {¶ 30} "[T]he overwhelming statistical evidence support[s] the high potential of recidivism among sex offenders whose crimes involve the exploitation of young children. The age of the victim is probative because it serves as a telling indicator of the depths of [the] offender's inability to refrain from such illegal conduct. The sexual molestation of young children, aside from its categorization as criminal conduct in every civilized society with a cognizable criminal code, is widely viewed as one of the most, if not the most, reprehensible crimes in our society. Any offender disregarding this universal legal and moral reprobation demonstrates such a lack of restraint that the risk of recidivism must be viewed as considerable." (Citations omitted.) Statev. Maynard (1999), 132 Ohio App.3d 820, 826; State v. Walker, 5th Dist. No. 2004CA00325, 2005-Ohio-2990 at ¶ 26-27.
 {¶ 31} "[S]ubstantial evidence exists which indicates that child sex offenders are generally serial offenders. Specifically, in considering the Jacob Wetterling Crimes Against Children Registration Act, Section 14701, Title 42, U.S. Code, the House Report prepared for the Act stated: `Evidence suggests that child sex offenders are generally serial offenders. Indeed one recent study concluded the `behavior is highly repetitive, to the point of compulsion,' and found that 74 percent of imprisoned child sex offenders had one or more prior sexual offenses against a child.' See H.R. Rep. No. 392, 103rd Congress (1993). Furthermore, in State v. Eppinger, supra, the Supreme Court stated: "Although Ohio's version, R.C. Chapter 2950, does not differentiate between crimes against children and crimes against adults, recidivism among pedophile offenders is highest. Some studies have estimated the rate of recidivism as being as high as fifty-two percent for rapists and seventy-two percent for child molesters." Comparet-Cassani, A Primer on the Civil Trial of a Sexually Violent Predator (2000), 37 San Diego L.Rev. 1057, 1071, citing Prentky, Recidivism Rates Among Child Molesters and Rapists: A Methodological Analysis (1997), 21 Law Human Behavior 635, 651.
 {¶ 32} "Furthermore, the United States Supreme Court, in McKune v.Lile (2002), 536 U.S. 24, 32-33, 122 S.Ct. 2017, 153 L.Ed.2d 47, stated `the victims of sex assault are most often juveniles,' and `[w]hen convicted sex offenders re-enter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault.
 {¶ 33} "In accordance, we can only conclude that the lower court was free to give due deference to the statistical likelihood of appellant's re-offending . . . Although the Ohio Supreme Court in Eppinger, supra, did not establish a bright-line rule that courts can rely solely on statistical evidence in making a sexual predator determination, it nevertheless endorsed the lower court's ability to give due weight to a statistical likelihood that sexual offenders of children are likely to re-offend when conducting its sexual predator determination.
 {¶ 34} "Further, in drafting R.C. Chapter 2950, the legislature recognized the existing statistical evidence, which overwhelmingly indicates that recidivism among pedophile offenders is highest. As stated in State v. Ellison, supra, the General Assembly passed the sexual predator laws in part because sexual predators `pose a high risk of engaging in further offenses even after being released from imprisonment.' Moreover, the United States Supreme Court has recognized that, statistically, convicted sex offenders who reenter society are much more likely than any other type of offender to be rearrested for a new rape or sex assault. McKune, supra." State v. Purser (2003), 153 Ohio App.3d 144,151-52, 2003-Ohio-3345 at ¶ 39-40, 791 N.E.2d 1053, 1058-59.
 {¶ 35} In the case at bar, the trial court heard evidence form the psychologist who assessed appellant that appellant did not understand the effect of his abuse on his victim. (T. at 62). The court found this to be of great significance. (Id.). The evidence further discloses that appellant made conflicting claims that he was sexually abused as a child. (Id. at 22). Finally, the evidence disclosed that during his incarceration, appellant has refused to participate in any sexual offender counseling programs offered by the penal system.
 {¶ 36} The trial court heard evidence that appellant went from being the abused to being the abuser. The court had every right, as the trier of fact, to draw conclusions from this fact. And the court's finding takes on a greater significance in light of appellant's pointed refusal to undergo treatment while incarcerated. Appellant's reason for refusing treatment — that he had "personality conflicts" — spoke poorly of his ability to grasp the extent of his problem. The court validly considered this cavalier attitude toward treatment as suggesting that appellant had not taken the necessary steps to control his problems. Additionally, the psychologist testified that appellant is at a moderate-to-high risk to reoffend.
 {¶ 37} Although there was no force used in appellant's case, the trial court did consider that the victim of the attack was asleep at the time. (T. at 62). The trial court further found that appellant's representation that alcohol was not used to ply the victim was questionable as the appellant's veracity had been called into question during his psychological evaluations. (Id. at 27-28; 62).
 {¶ 38} Because the court engaged in fact finding, we must be extremely reluctant to reverse this sexual predator determination, particularly where the offender is an admitted child molester. Appellant's sexual predator classification was supported by competent credible evidence showing clearly and convincingly that he was likely to commit a sexually oriented offense in the future.
 {¶ 39} Appellant's Sole Assignment of Error is overruled.
 {¶ 40} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.
Gwin, P.J., Farmer, J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed. Costs to appellant.