OPINION
{¶ 1} Defendant-appellant, William L. Gist, appeals from the judgment of the Columbiana Court of Common Pleas finding him guilty of attempted murder and aggravated burglary, accompanied by firearm specifications, after a jury trial and from the sentence imposed on him by the trial court.
 {¶ 2} Appellant was involved for six or seven years with a woman named Candice Coleman (Candy). They had four children together. Apparently, the two had broken up and Candy refused to allow appellant to see the children because he had been acting violently towards her.
 {¶ 3} Candy and the children resided with Candy's parents, Joyce (Joyce) and Gary Coleman (Gary). According to Joyce, on August 5, 1998 she was home alone with the children. She went to the basement to do laundry when she noticed appellant in the basement with a rifle pointed at her. Joyce ran up the stairs to the kitchen and appellant followed. Appellant yelled at her to get back down to the basement. She went back through the door to the basement and held it closed while appellant remained in the kitchen. Joyce testified that appellant shot at her through the kitchen door as she ran to exit the basement through another door. A bullet grazed Joyce's ear and head as she escaped. She ran to the neighbor's house where they contacted the police.
 {¶ 4} Appellant was subsequently arrested and indicted on one count of aggravated burglary in violation of R.C. 2911.11(A)(1) with a firearm specification and one count of attempted murder in violation of R.C. 2923.02(A) and R.C. 2903.02(A) with a firearm specification.
 {¶ 5} Appellant proceeded to a jury trial. The jury found appellant guilty of all of the charges in the indictment. The trial court entered judgment on the verdict and sentenced appellant the same day. The court sentenced appellant to ten years of imprisonment for the attempted murder conviction, three years for the firearm specification, and eight years for the aggravated burglary conviction to be served consecutively. Appellant's timely appeal followed.
 {¶ 6} The trial court appointed appellant appellate counsel. Counsel filed a brief on appellant's behalf raising two assignments of error. Additionally, appellant filed a pro se brief raising five more assignments of error. The assignments of error will be addressed in order as assignments of error one through seven.
 {¶ 7} Appellant's first assignment of error states:
 {¶ 8} "THE DEFENDANT/APPELLANT WAS PREJUDICED IN THIS MATTER DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL WHO FAILED TO INVESTIGATE AND PROVIDE EVIDENCE BENEFICIAL TO THE DEFENDANT/APPELLANT AND IN MITIGATION OF HIS ACTIONS."
 {¶ 9} Appellant argues that his trial counsel was ineffective in numerous ways. Appellant claims that his counsel failed to investigate his background and childhood, which revealed that appellant watched his father kill appellant's mother. He argues that counsel should have brought this fact to the jury's and the court's attention. Appellant also argues that his counsel failed to present a proper argument for change of venue. He claims that he was prejudiced because the jury venire was made up almost entirely of white jurors because the jury list was comprised from voter registration lists. Next, appellant argues that his counsel failed to object to the testimony of his son, William Gist, Jr. (JR). Appellant also argues that his counsel should not have revealed the name of Ron Flannery (Flannery) during discovery as a possible witness because appellant made several inculpatory statements to Flannery. Finally, appellant contends that his counsel should have objected to two photographs which plaintiff-appellee, the State of Ohio, introduced as evidence depicting Joyce's head wounds.
 {¶ 10} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. Strickland v. Washington (1984),466 U.S. 668, 687; State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. Bradley, supra, at paragraph three of the syllabus.
 {¶ 11} Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999), 86 Ohio St.3d 279,289. In Ohio, a licensed attorney is presumed competent. Id.
 {¶ 12} Regardless of whether counsel's performance was or was not deficient, appellant cannot meet the second prong of the Strickland
test. Appellant was not prejudiced by his counsel's performance. The testimony of the witnesses still would have established appellant's guilt. Appellant himself testified that he did not have permission to remain in the Colemans' house. He also testified that he took Gary's rifle from under the Colemans' bed. Appellant further testified that he shot the rifle to scare Joyce. Joyce testified that appellant shot her. Candy, Joyce, and Gary all testified that they did not give appellant permission to be in the house.
 {¶ 13} Even if appellant's counsel had conducted his investigation differently, made a stronger argument for a change of venue, objected to JR's testimony, did not reveal Flannery as a witness, and objected to the photographs of Joyce's injuries, the outcome of the trial would have remained the same. None of these alleged errors affected the overwhelming evidence of appellant's guilt.
 {¶ 14} Accordingly, appellant's first assignment of error is without merit.
 {¶ 15} Appellant's second assignment of error states:
 {¶ 16} "THE FINDING OF THE JURY AND THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE OVERTURNED OR REMANDED FOR FURTHER PROCEEDINGS."
 {¶ 17} Appellant argues that the jury's verdict was against the manifest weight of the evidence. As to the aggravated burglary conviction, appellant argues that there was no evidence of forced entry or entry by deception. He claims that the evidence demonstrated that Candy invited him into the house. Appellant also asserts that there was no evidence that he entered the house with a criminal purpose. As to the attempted murder conviction, appellant argues that at best, appellee proved that he was guilty of felonious assault. He asserts that he had no plan to attempt to murder Joyce, nor did he bring a weapon into the house.
 {¶ 18} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 19} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 20} The jury convicted appellant of attempted murder in violation of R.C. 2923.02(A) and R.C. 2903.02(A) and aggravated burglary in violation of R.C. 2911.11(A), with a firearm specification in violation of R.C. 2941.145. R.C. 2923.02(A) provides:
 {¶ 21} "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 22} R.C. 2903.02(A) provides, in pertinent part:
 {¶ 23} "No person shall purposely cause the death of another * * *."
 {¶ 24} The following evidence was adduced at trial regarding the attempted murder charge. Candy, Joyce and Gary all testified that appellant was abusive towards Candy and that they had refused to allow appellant to see the children. Candy also testified that she obtained a civil protection order to keep appellant away from her and the children on July 31, 1998.
 {¶ 25} Gary testified that he kept his rifle in its case underneath his bed. Appellant testified that he went into Joyce and Gary's bedroom, under their bed, and took Gary's rifle. He testified that he brought the rifle down to the basement. Appellant further testified that he planned to hide the rifle because he was afraid of Gary.
 {¶ 26} Joyce testified that she went to the basement and was sorting clothes when she turned around and appellant was standing behind her with the rifle at her head. She testified that she ran up the stairs and appellant knocked her down and stood over her with the rifle pointed at her. She further testified that he pulled the trigger and it clicked. Joyce stated that she got up and ran back to the basement stairs and pulled the door shut. She testified that appellant shot through the door. Joyce stated that she ran to get out of the basement and felt her hair flutter when appellant shot again. Joyce escaped to a neighbor's house with injuries to her ear and the back of her head from a bullet.
 {¶ 27} Appellant's son, JR, testified that he saw his father (appellant) shoot his grandma (Joyce). The Colemans' neighbor, William Shields, testified that Joyce ran to his driveway with blood running out of her and that she told him that appellant had broken into her house and shot her.
 {¶ 28} Appellant testified that he shot the rifle but did not intend to kill Joyce, only to frighten her. He also testified that he fired it four times during this incident.
 {¶ 29} Given the above evidence, it is apparent that the greater amount of evidence supports the jury's finding of guilt on the attempted murder charge.
 {¶ 30} R.C. 2911.11(A) provides:
 {¶ 31} "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 32} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 {¶ 33} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 34} A review of the record reveals the following evidence in support of the aggravated burglary conviction. Appellant was present in the Coleman house. Joyce, Candy, and Gary each testified that they did not give appellant permission to be in their home. Appellant testified that Candy gave him permission to enter the house. However, he also testified that she did not give him permission to remain in the house as long as he did. Flannery, a volunteer at the county jail, testified that appellant told him that he was not permitted to be at the Coleman house.
 {¶ 35} Joyce and the four children were in the house when this incident occurred. Appellant and Joyce both testified that appellant used Gary's rifle to threaten Joyce. Joyce testified that appellant shot her and a bullet grazed the back of her head and ear.
 {¶ 36} It cannot be said that the jury lost its way in finding that appellant committed the crime of aggravated burglary based on this evidence.
 {¶ 37} Thus, appellant's second assignment of error is without merit.
 {¶ 38} Appellant's third, fourth, and fifth assignments of error challenge the trial court's findings in regard to sentencing and, therefore, will be addressed together. These three assignments of error state:
 {¶ 39} "THE TRIAL COURT ERRED WHEN IT SENTENCED THE APPELLANT TO A TERM OF INCARCERATION GREATER THAN THE MINIMUM TERM WITHOUT MAKING THE REQUIRED FINDINGS ON THE RECORD THAT THE MINIMUM TERM WOULD DEMEAN THE SERIOUSNESS OF THE OFFENSE OR NOT ADEQUATELY PROTECT THE PUBLIC."
 {¶ 40} "THE TRIAL COURT ERRED WHEN IT SENTENCED THE APPELLANT TO MAXIMUM TERMS OF INCARCERATION FOR MORE THAN ONE OFFENSE FOR CONDUCT ARISING OUT OF THE SAME INCIDENT WITHOUT MAKING A FINDING AND STATING ITS REASONS."
 {¶ 41} "THE TRIAL COURT ERRED WHEN IT SENTENCED THE APPELLANT TO CONSECUTIVE TERMS OF INCARCERATION WITH OUT [sic.] MAKING A FINDING AND STATING ITS REASONS."
 {¶ 42} Appellant argues that the trial court did not make any findings on the record before sentencing him.
 {¶ 43} The trial court sentenced appellant to ten years for the attempted murder conviction, eight years for the aggravated burglary conviction, and three years for the firearm specification to be served consecutively. Both attempted murder and aggravated burglary are felonies of the first degree and carry with them a possible prison sentence of three, four, five, six, seven, eight, nine, or ten years. R.C.2929.14(A)(1). The firearm specification carries with it a mandatory three-year sentence. R.C. 2929.14(D)(1)(a)(ii).
 {¶ 44} Appellant claims that the trial court failed to find on the record that the minimum prison term would demean the seriousness of the offense or would not adequately protect the public in accordance with R.C. 2929.14(B), and therefore, erred in sentencing him to prison terms greater than the minimum terms. Appellant also argues that the court failed to make the findings necessary pursuant to R.C. 2929.14(C) to sentence him to maximum terms of imprisonment.
 {¶ 45} R.C. 2929.14(B) provides:
 {¶ 46} "Except as provided in division (C), (D)(1), (D)(2), (D)(3), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 47} R.C. 2929.14(C) provides:
 {¶ 48} "[T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders * * *."
 {¶ 49} The trial court sentenced appellant to the maximum prison term for attempted murder and to more than the minimum term for aggravated burglary. Thus, according to R.C. 2929.14(B), R.C. 2929.14(B) applies to appellant's sentence for aggravated burglary while R.C.2929.14(C) applies to appellant's sentence for attempted murder. A well-established rule of construction is that "`[i]n looking to the face of a statute or Act to determine legislative intent, significance and effect should be accorded to every word, phrase, sentence and part thereof, if possible.'" KeyCorp v. Tracy (1999), 87 Ohio St.3d 238, 241, quoting State v. Wilson (1997), 77 Ohio St.3d 334, 336-337. Here, R.C.2929.14(B) begins, "Except as provided in division (C) * * * of this section." Applying the plain meaning of these words in this phrase, it means that R.C. 2929.14(B) does not apply if the court imposes a maximum sentence upon an offender.
 {¶ 50} This interpretation of R.C. 2929.14(B) and (C) as mutually exclusive has been adopted by other districts. In State v. Gladden, 8th Dist. No. 76908, 2001-Ohio-4129, the Eighth District held that "once a trial court makes the requisite findings justifying a maximum term of incarceration under R.C. 2929.14(C), it thereafter is not required to justify its reasons for imposing more than the minimum term of incarceration, in spite of the offender's status as an offender who previously had not served a prison term." See, also, State v. Berry (June 14, 2001), 8th Dist. No. 78187; State v. Sherman (May 20, 1999), 8th Dist. No. 74297. In State v. Jackson (Aug. 20, 1999), 1st Dist. No. C-980512, the First Appellate District stated that the express language of R.C. 2929.14(B) "renders the section inapplicable where an offender is sentenced to a maximum prison term under R.C. 2929.14(C)," and clarified its earlier pronouncements holding "where an offender who has not previously served a prison term is sentenced to a maximum term of imprisonment, where the imposition of that sentence is accompanied by the requisite finding under R.C. 2929.14(C), and where that finding is supported by the record, the trial court need not also make a separate finding under 2929.14(B) to justify its imposition of more than the minimum term of imprisonment." In State v. Phipps (Feb. 25, 1999), 3rd Dist. No. 1-98-69, the Third Appellate District noted that "the applicability of [R.C. 2929.14(B)], by its own terms, is conditioned upon the non-applicability of R.C. 2929.14(C)."
 {¶ 51} In State v. Moore (Sept. 10, 2001), 12th Dist. No. CA2001-01-001, the Twelfth Appellate District agreed with the other districts that had addressed the issue. The Twelfth District also proceeded to reconcile that interpretation of those provisions with the Ohio Supreme Court's decision in State v. Edmonson (1999),86 Ohio St.3d 324. In Edmonson, the Ohio Supreme Court analyzed the requirements of R.C. 2929.14(B) before affirming a maximum sentence under R.C. 2929.14(C). The Twelfth District distinguished Edmonson observing:
 {¶ 52} "First, the precise issue before the court in Edmonson was whether the trial court was required to state its reasons for imposing more than the minimum sentence, and the syllabus reflects the court's holding on this issue only. Second, the Edmonson court found that the trial court failed to make the required findings under R.C. 2929.14(C), regarding imposition of the maximum sentence. Thus, unlike the case at bar, it was impossible for the Ohio Supreme Court to conclude that because the maximum sentence was properly imposed, minimum sentence findings were not required." Moore, supra.
 {¶ 53} As to appellant's aggravated burglary sentence, to which R.C. 2929.14(B) applies, although appellant has a criminal record, it does not appear that he has ever served a prison term. Therefore, he was entitled to the presumption of the shortest prison term unless the court made one of the two findings required by R.C. 2929.14(B).
 {¶ 54} In State v. Higgenbotham (Mar. 21, 2000), 7th Dist. No. 97 BA 70, the court noted:
 {¶ 55} "As to R.C. 2929.14(B), the [Ohio Supreme Court] indicated that the record must reflect that the trial court found that `either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence.' State v. Edmonson (1999),86 Ohio St.3d 324, 326. While the trial court is not required to give its reasons for reaching this finding, it must nonetheless explicitly
indicate in the record that the shortest prison term would either demean the seriousness of the conduct or would not adequately protect the public from future crimes. Id. Absent this specification, a trial court may not stray from the statutorily mandated minimum sentence. Id." (Emphasis added.)
 {¶ 56} In this case, the trial court made the following findings on the record:
 {¶ 57} "In this particular case, the court notes that the defendant does have a criminal record in the past. Though it may not be an extensive felony record, this particular offense isn't one where we give multiple opportunities to try to kill people. There's no question in this Court's mind, and I'm sure the jury's or they wouldn't have convicted the defendant, that but for the grace of God, as the prosecutor indicated, the victim would be dead. Because these gunshot wounds were pretty close to the head or cranium, and usually with a 30-30 caliber shot to the head with a rifle, the odds of survival are not very good. So the harm done alone mandates a prison sentence on these felonies of the first degree.
 {¶ 58} "* * *
 {¶ 59} "The court looks at the issue also, is this the worst or the least form of an offense? Well, this person was wounded in the area of the head in two places, I mean, merely inches from death. I don't know how it can get much closer, I suppose, unless it enters the skull and one miraculously survives. I find it's a more serious offense of attempted murder. If nobody was harmed, that would be a less serious offense. Somebody was harmed here.
 {¶ 60} "Again, a firearm or weapon was used. * * *. He made a trip to someone else's bedroom to actually retrieve the weapon, which shows to this court some intent involved in this matter.
 {¶ 61} "* * *
 {¶ 62} "To this court, it appears that the defendant committed these offenses while he was under a court order ordering him not to go upon the property or be around the individuals.
 {¶ 63} "Defendant admittedly has a problem of losing control of his temper. Which again, when one loses control of their temper, there's a little bit of difference between losing control of your temper, and picking up a gun and chasing somebody through their own house and shooting at them four times. That's the kind of loss of temper that this society can not tolerate.
 {¶ 64} "It's clear to this court that the public needs protection from the defendant's temper, and defendant does pose a risk of recitivism [sic.] of violent offenses."
 {¶ 65} "* * *
 {¶ 66} "This court should add one other factor that it considers in imposing sentence. And that is that the defendant has not shown a remorse in what he did or admitted what he did. He somehow blames this offense on other people and tried to deny, in the face of overwhelming odds that he shot the gun, he admitted he shot the gun, but then came up with some story about why he shot the gun. He has never admitted his fault or the fact that he attempted to murder the victim in this case.
 {¶ 67} "Wherefore, considering all the criteria in the statute, and those that I have set forth here this afternoon, it is going to be the order of this court * * *." (Tr. 510-15).
 {¶ 68} Although it appears that the court engaged in the analysis contemplated by the sentencing statute, it failed to make one of the two requisite findings to sentence appellant to greater than the minimum prison term. Without making one of the two required findings, the trial court was obligated to sentence appellant to the statutory minimum sentence for the aggravated burglary conviction, or three years. Thus, the trial court erred in failing to make the necessary finding.
 {¶ 69} As to appellant's attempted murder sentence, in addition to R.C. 2929.14(C), R.C. 2929.19(B)(2)(d) also applies. R.C. 2929.19(B)(2)(d) states:
 {¶ 70} "(B)(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 71} "* * *
 {¶ 72} "(d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term; "
 {¶ 73} In Higgenbotham, supra, the court observed:
 {¶ 74} "As to R.C. 2929.14(C), the [Ohio Supreme Court in Statev. Edmonson (1999), 86 Ohio St.3d 324] held that a trial court must record a finding that the defendant fits into one of the categories of offenders listed in the statute section. Id. at 329. While the court again need not itemize its reasons for reaching the conclusion, it must still specify its finding in the record. Id. Statements by a trial court which may impliedly demonstrate that the court made the requisite finding pursuant to R.C. 2929.14(C) are not sufficient."
 {¶ 75} In analyzing whether the trial court had complied with this requirement in Higgenbotham, supra, the court wrote:
 {¶ 76} "[T]he record fails to reveal any compliance with R.C.2929.14(C) as to imposing the maximum sentence. A review of both the sentencing entry and the transcript from the sentencing hearing supports appellant's contention in this aspect. At no point in time does the trial court assert that appellant committed the worst form of the offense which he was charged with. Similarly, the trial court does not make any of the other findings available under R.C. 2929.14(C) which would permit the imposition of the maximum sentence. Absent such a finding, appellant's sentence must be vacated as it is contrary to law. Id. at 329.
 {¶ 77} "While the trial court did make statements on the record and in its sentencing entry which impliedly demonstrate that appellant committed the worst form of the offense, it is not for this court to make assumptions regarding appellant's categorization under R.C. 2929.14(C). It is the trial court's duty to affirmatively demonstrate its compliance with this statute so as to verify that it conformed with the policies set forth by the General Assembly when it drafted the sentencing statutes.Id.
 {¶ 78} "As to R.C. 2929.19(B)(2)(d), the trial court's statements in the sentencing entry do indicate that reasons were provided for imposing the maximum sentence. For instance, the trial court stated that the offender did not show genuine remorse and had utilized his relationship with the child in order to effectuate the offense. Furthermore, the trial court made a number of statements on the record as to the child's psychological trauma and the gravity of the offense. However, any reasoning by the trial court must be accompanied by the appropriate finding pursuant to R.C. 2929.14(C). Since the trial court didnot make the necessary finding, its reasoning as outlined in its entrywas fruitless." (Emphasis added.)
 {¶ 79} This case is much like Higgenbotham. A review of both the sentencing entry and the transcript of the sentencing hearing reveals that the trial court failed to record a finding in compliance with R.C.2929.14(C). The trial court does pose the question of whether appellant committed the worst form of the offense; however, it never explicitly
came to that conclusion. In addition, as to R.C. 2929.19(B)(2)(d), the trial court's statements at the sentencing hearing do indicate reasons which would support imposition of the maximum sentence. However, any reasoning by the trial court must be accompanied by the appropriate finding pursuant to R.C. 2929.14(C).
 {¶ 80} Finally, appellant argues that the trial court failed to state its reasons for ordering that appellant serve his sentences consecutively as is required by R.C. 2929.19(B)(2)(c).
 {¶ 81} R.C. 2929.19(B)(2)(c) provides that the trial court shall make a finding that gives its reasons for imposing consecutive sentences. R.C. 2929.14(E)(4) states:
 {¶ 82} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 83} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 84} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 85} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 86} Again, although the trial court stated its reasoning for imposing the sentence it did, the court failed to make the required findings in accordance with R.C. 2929.14(E)(4). Nowhere on the record did the trial court specifically find that consecutive prison terms were necessary to protect the public from future crime or to punish appellant. Nor did the court find that consecutive sentences were not disproportionate to the seriousness of appellant's conduct and to the danger appellant poses to the public.
 {¶ 87} Accordingly, appellant's third, fourth, and fifth assignments of error have merit.
 {¶ 88} Appellant's sixth assignment of error states:
 {¶ 89} "THE COURT ERRED IN IMPOSING MAXIMUM SENTENCES BECAUSE THE STANDARD USED BY THE COURT, THAT THE OFFENDER COMMITTED `ONE OF THE WORST FORMS OF THE OFFENSE' OR POSES THE `GREATEST LIKELIHOOD' OF COMMITTING FUTURE CRIMES, IS UNCONSTITUTIONALLY VAGUE."
 {¶ 90} Appellant alleges that R.C. 2929.14(C) is void for vagueness. Specifically, he alleges that the language "one of the worst forms of the offense" and "greatest likelihood of recidivism" is overly vague.
 {¶ 91} It is axiomatic that all legislative enactments enjoy a presumption of constitutionality. State v. Dorso (1983), 4 Ohio St.3d 60,61, citing Benevolent Assn. v. Parma (1980), 61 Ohio St.2d 375, 377;State, ex rel. Taft v. Campanella (1977), 50 Ohio St.2d 242, 246; State,ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus. Furthermore, we must apply all presumptions and pertinent rules of construction to uphold, if at all possible, a statute alleged to be unconstitutional. Id., citing State v. Sinito (1975), 43 Ohio St.2d 98,101; Wilson v. Kennedy (1949), 151 Ohio St. 485, 492; Eastman v. State
(1936), 131 Ohio St. 1, paragraph four of the syllabus.
 {¶ 92} A statute is void for vagueness if it either fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden or if it encourages arbitrary and discriminatory enforcement. State v. Moore (Apr. 19, 2000), 9th Dist. No. 19544, citing Kolender v. Lawson (1983), 461 U.S. 352, 357. Sentencing guidelines are not intended to inform offenders of the consequences for violating a particular statute. Id., citing State v.Mushrush (1999), 135 Ohio App.3d 99. The guidelines are intended to provide guidance to judges when imposing a sentence on a defendant. Id.
 {¶ 93} The challenged section of the statute reads:
 {¶ 94} "Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, * * *." R.C. 2929.14(C). (Emphasis added.)
 {¶ 95} Appellant attacks two clauses in R.C. 2929.14(C). He attacks the language "the worst forms of the offense" and "offenders who pose the greatest likelihood of committing future crimes." As to the language "offenders who pose the greatest likelihood of committing future crimes," the trial court did not attempt to apply this portion of the statute to appellant; thus, he lacks standing to challenge its constitutionality.
 {¶ 96} The First District Court of Appeals previously addressed the remaining issue in Mushrush, supra. In Mushrush, the court held that the sentencing guideline requiring that the trial judge find that the defendant committed "the worst forms of the offense" before imposing a maximum sentence is not unconstitutionally void for vagueness. Id. at 109. The court reasoned that the sentencing guidelines must be considered as a whole and that when doing so the trial court is guided by R.C.2929.12(B) and (C) to aid in determining the seriousness of the offense. Id. at 110. Other appellate courts have dealt with this issue and followed Mushrush. See State v. Shupe (Oct. 27, 2000), 6th Dist. No. H-00-10; Moore, supra.
 {¶ 97} Accordingly, appellant's sixth assignment of error is without merit.
 {¶ 98} Appellant's seventh assignment of error states:
 {¶ 99} "OTHER ERRORS WERE COMMITTED AT TRIAL NOT RAISED HEREIN BUT APPARENT ON THE RECORD."
 {¶ 100} Appellant argues that a review of the record reveals other errors which merit reversal of his conviction.
 {¶ 101} This court may disregard an assignment of error presented for review if the appellant fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief. App.R. 12(A)(2) and 16(A). This court is not required to search the entire record for potential errors that neither appellant nor his counsel have drawn to our attention.
 {¶ 102} Accordingly, appellant's seventh assignment of error is without merit.
 {¶ 103} For the reasons stated above, the decision of the trial court is hereby affirmed as to appellant's conviction, reversed as to appellant's sentence and remanded for resentencing according to law and consistent with this opinion.
Vukovich, J., concurs in part and dissents in part; see concurring in part and dissenting in part opinion.
DeGenaro, J., concurs.